## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION, YOUNGSTOWN

ROBERT SCHRIVER, on behalf of himself
and all others similarly situated,

          Plaintiff,

    v.

GOLDEN CORRAL CORPORATION,

          Defendant.

Case No. 4:17-cv-00136

Judge Benita Y. Pearson

## NOTICE OF PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF
## SETTLEMENT, SERVICE AWARD, AND ATTORNEYS' FEES AND COSTS

Plaintiff respectfully submits the following Unopposed Motion for Approval of Settlement, Service Awards, and Attorneys' Fees and Costs ("Motion").  For the reasons set forth in the Memorandum of Law in Support of Plaintiff's Motion, the Declaration of Melissa L. Stewart in Support of Plaintiff's Motion ("Stewart Decl."), and the exhibits attached thereto, Plaintiff respectfully requests that the Court enter an Order:

(1) approving the $3,900,000.00 collective action settlement set forth in the Settlement Agreement ("Settlement Agreement"), attached as Exhibit 1 to the Stewart Decl.;

(2) approving the proposed Notice of Settlement and Opportunity to Join ("Settlement Notice") (attached as Exhibit A to the Settlement Agreement) and directing its distribution;

(3) approving a Service Award for Plaintiff Robert Schriver;

(4) approving Plaintiff's request for one-third of the settlement fund for attorneys' fees, plus reimbursement of costs and expenses;

(5) approving American Legal Claim Services LLC as the Settlement Administrator and approving payment of its fees, expenses, and costs;

(6) decertifying the previously certified Rule 23 classes; and

(6) incorporating the terms of the Settlement Agreement.

Dated:  New York, New York
        May 21, 2018                    Respectfully submitted,

                                        By:    */s/ Melissa L. Stewart*
                                                   Melissa L. Stewart

                                        **OUTTEN & GOLDEN LLP**
                                        Justin M. Swartz (admitted *pro hac vice*)
                                        Melissa L. Stewart (admitted *pro hac vice*)
                                        Christopher M. McNerney (admitted *pro hac vice*)
                                        685 Third Avenue, 25th Floor
                                        New York, New York 10017
                                        Telephone: (212) 245-1000

                                        **LANDSKRONER GRIECO MERRIMAN LLC**
                                        Drew Legando (0084209)
                                        1360 West Ninth Street, Suite 200
                                        Cleveland, Ohio 44107
                                        Telephone: (216) 522-9000

                                        **SHAVITZ LAW GROUP, P.A.**
                                        Gregg I. Shavitz (admitted *pro hac vice*)
                                        1515 S. Federal Highway
                                        Boca Raton, Florida 33432
                                        Telephone: (561) 447-8888

                                        Michael Palitz (admitted *pro hac vice*)
                                        830 3rd Avenue, 5th Floor
                                        New York, New York 10022
                                        Telephone: (800) 616-4000

                                        *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 21, 2018, the above document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By:     */s/ Melissa L. Stewart*
           Melissa L. Stewart

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION, YOUNGSTOWN**

| | |
|---|---|
| ROBERT SCHRIVER, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Case No. 4:17-cv-00136 |
| v. | Judge Benita Y. Pearson |
| GOLDEN CORRAL CORPORATION, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED**
**MOTION FOR APPROVAL OF SETTLEMENT, SERVICE**
**AWARD, AND ATTORNEYS' FEES AND COSTS**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND...................................................... 1

    I.      Factual Allegations ........................................................................... 1

    II.     Overview of Litigation and Negotiations ............................................ 1

SUMMARY OF KEY SETTLEMENT TERMS ............................................................ 2

    I.      The Settlement Fund .......................................................................... 2

    II.     Eligible Employees ............................................................................ 3

    III.    Settlement Notice Procedure.............................................................. 3

    IV.    Release ............................................................................................... 4

    V.     Allocation Formula ............................................................................ 4

    VI.    Service Award .................................................................................... 5

    VII.   Settlement Administration .................................................................. 5

    VIII.  Attorneys' Fees and Litigation Costs................................................. 5

ARGUMENT .................................................................................................................. 6

    I.      The Court Should Approve The Collective Action Settlement Procedure. ............ 6

    II.     The Settlement Is Fair And Reasonable And Should Be Approved....................... 8

    III.    The Proposed Settlement Notice Is Proper. ........................................................ 10

    IV.    The Service Award Should Be Approved As Fair And Reasonable. .................. 10

    V.     Attorneys' Fees And Costs Should Be Approved As
          Fair And Reasonable........................................................................................... 12

          A.    The Percentage Method Is Appropriate For Awarding
                Attorneys' Fees. ................................................................................ 12

          B.    The Sixth Circuit's Award Factors Support Approval
                of Attorneys' Fees............................................................................. 14

1.      The Settlement Bestows Significant
                Benefit On The Collective. .......................................................... 15

        2.      Plaintiff's Counsel Expended Substantial Time And Labor. ........ 15

        3.      Plaintiff's Counsel Undertook The Litigation
                On A Contingent Basis. ............................................................... 17

        4.      Public Interest Favors Approval of Attorneys' Fees .................... 18

        5.      This Wage And Hour Collective Action Is Complex. .................. 19

        6.      The Quality of Representation And Professional Skill of
                Plaintiff's And Defendants' Counsel Support
                Approval of The Requested Fees. ................................................ 19

    C.  Plaintiff's Counsel Are Entitled to Reimbursement of
        Reasonable Expenses. ............................................................................... 19

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

CASES                                                                                                    PAGE(S)

*A.H. Phillips, Inc. v. Walling*,
    324 U.S. 490 (1945) ........................................................................................ 18

*Aboud v. Charles Schwab & Co.*,
    No. 14 Civ. 2712, 2014 WL 5794655 (S.D.N.Y. Nov. 4, 2014) ........................... 13

*Am. Pipe & Const. Co. v. Utah*,
    414 U.S. 538 (1974) .......................................................................................... 8

*Azogue v. 16 for 8 Hosp. LLC*,
    No. 13 Civ. 7899, 2016 WL 4411422 (S.D.N.Y. Aug. 19, 2016) ........................... 5

*Bailey v. AK Steel Corp.*,
    No. 06 Civ. 468, 2008 WL 553764 (S.D. Ohio Feb. 28, 2008)........................ 12, 17

*Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    640 F. Supp. 697 (S.D. Ohio 1986) .................................................................... 12

*Bassett v. Tenn. Valley Auth.*,
    No. 09 Civ. 39, 2010 WL 3092251 (W.D. Ky. Aug. 5, 2010).............................. 10

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) .................................................................. 13, 19

*Bessey v. Packerland Plainwell, Inc.*,
    No. 06 Civ. 95, 2007 WL 3173972 (W.D. Mich. Oct. 26, 2007) ......................... 13

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)................................................................................ 12, 13, 14, 15

*Bowling v. Pfizer, Inc.*,
    102 F.3d 777 (6th Cir. 1996) .............................................................................. 15

*Bradford v. Legacy Health Servs.*,
    No. 13 Civ. 218, 2014 WL 7185453 (N.D. Ohio Dec. 16, 2014)........................... 6

*Castillo v. Morales, Inc.*,
    No. 12 Civ. 650, 2015 WL 13021899 (S.D. Ohio Dec. 22, 2015) ....................... 13

*Chesher v. Neyer*,
    No. 01 Civ. 0566, 2007 WL 4553908 (S.D. Ohio Dec. 19, 2007) ....................... 14

*Clem v. Keybank, N.A.*,
    No. 13 Civ. 789, 2014 WL 2895918 (S.D.N.Y. June 20, 2014)............................ 13

iv

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014)......................................................................... 16

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
   No. 08 Civ. 01998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ...................................... 19

*Crawford v. Lexington-Fayette Urban Cty. Gov't*,
   No. 06 Civ. 299, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008)................................................ 8

*Deposit Guar. Nat'l Bank v. Roper, Jackson, Miss.*,
   445 U.S. 326 (1980)........................................................................................................ 18

*Dillworth v. Case Farms Processing, Inc.*,
   No. 05 Civ. 1694, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010).................................. 8, 13, 18

*Dodge v. Cty. of Orange*,
   226 F.R.D. 177 (S.D.N.Y. 2005) .................................................................................... 6

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
   130 F.R.D. 366 (S.D. Ohio 1990) .................................................................................... 11

*Edwards v. City of Mansfield*,
   No. 15 Civ. 959, 2016 WL 2853619 (N.D. Ohio May 16, 2016)............................................ 6

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*,
   137 F.R.D. 240 (S.D. Ohio 1991) .................................................................................... 11

*Feiertag v. DDP Holdings, LLC*,
   No. 14 Civ. 2643, 2016 WL 4721208 (S.D. Ohio Sept. 9, 2016)................................... 12, 19

*Gascho v. Glob. Fitness Holdings, LLC*,
   822 F.3d 269 (6th Cir. 2016) .............................................................................. 12, 13, 15

*Gen. Tel. Co. v. Falcon*,
   457 U.S. 147 (1982)........................................................................................................ 7

*Gentrup v. Renovo Servs., LLC*,
   No. 07 Civ. 430, 2011 WL 2532922 (S.D. Ohio June 24, 2011)..................................... 18, 19

*Gokare v. Fed. Express Corp.*,
   No. 11 Civ. 2131, 2013 WL 12094887 (W.D. Tenn. Nov. 22, 2013) ................................... 15

*Hadix v. Johnson*,
   322 F.3d 895 (6th Cir. 2003) .......................................................................................... 11

*Hainey v. Parrott*,
   617 F. Supp. 2d 668 (S.D. Ohio 2007) .............................................................................. 8

*Headlee v. Wolford*,
  No. 09 Civ. 92, 2012 U.S. Dist. LEXIS 44257, (S.D. Ga. March 29, 2012) .......................... 8

*Hoffmann–La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989) ........................................................................................................ 10

*Hurt v. Commerce Energy, Inc.*,
  No. 12 Civ. 758, 2014 WL 3735460 (N.D. Ohio July 28, 2014) ........................................... 7

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
  204 F.R.D. 330 (N.D. Ohio 2001) ..................................................................................... 7

*In re Ira Haupt & Co.*,
  304 F. Supp. 917 (S.D.N.Y. 1969) .................................................................................... 9

*IUE-CWA v. Gen. Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich. 2006) .................................................................................... 9

*Knox v. Jones Grp.*,
  No. 15 Civ. 1738, 2017 WL 3834929 (S.D. Ind. Aug. 31, 2017) ......................................... 7

*Kritzer v. Safelite Solutions, LLC*,
  No. 10 Civ. 0729, 2012 WL 1945144 (S.D. Ohio, May 30, 2012) ........................... 8, 11, 19

*L & W Supply Corp. v. Acuity*,
  475 F.3d 737 (6th Cir. 2007) .......................................................................................... 20

*Lapan v. Dick's Sporting Goods*,
  No. 13 Civ. 11390 (D. Mass. April 19, 2016) ................................................................... 13

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
  No. 17 Civ. 10219, 2017 WL 6460244 (D. Mass. June 8, 2017) ......................................... 7

*Levell v. Monsanto Research Corp.*,
  191 F.R.D. 543 (S.D. Ohio 2000) .................................................................................... 10

*Lonardo v. Travelers Indem. Co.*,
  706 F. Supp. 2d 766 (N.D. Ohio 2010) ....................................................................... 11, 17

*Manners v. Am. Gen. Life Ins. Co.*,
  No. 98 Civ. 0266, 1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999) ................................... 17

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
  No. 05 Civ. 11148, 2009 WL 2408560 (D. Mass. Aug. 3, 2009) ........................................ 17

*Northcross v. Bd. of Educ. of Memphis City Schs.*,
  611 F.2d 624 (6th Cir. 1979) .......................................................................................... 20

*Osman v. Grube*,
    No. 16 Civ. 00802, 2018 WL 2095172 (N.D. Ohio May 4, 2018) .......................................... 6

*Prena v. BMO Fin. Corp.*,
    No. 15 Civ. 9175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) ............................................. 6

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    158 F.R.D. 301 (S.D.N.Y. 1994) ..................................................................................... 8

*Rawlings v. Prudential–Bache Properties, Inc.*,
    9 F.3d 513 (6th Cir. 1993) ..................................................................................... 12, 14

*Renfro v. Ind. Mich. Power Co.*,
    No. 99 Civ. 877, 2007 WL 710138 (W.D. Mich. Mar. 6, 2007) .......................................... 20

*In re Rite Aid Corp. Sec. Litig.*,
    362 F. Supp. 2d 587 (E.D. Pa. 2005) ................................................................................ 17

*Rotuna v. W. Customer Mgmt. Grp., LLC*,
    No. 09 Civ. 1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010) ...................... 10, 11, 13, 18

*Schneider v. Goodyear Tire & Rubber Co.*,
    No. 13 Civ. 2741, 2014 WL 2579637 (N.D. Ohio June 9, 2014) .......................................... 8

*Sewell v. Bovis Lend Lease, Inc.*,
    No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) .......................................... 9

*Smillie v. Park Chem. Co.*,
    710 F.2d 271 (6th Cir. 1983) ...................................................................................... 12

*In re S. Ohio Corr. Facility*,
    173 F.R.D. 205 (S.D. Ohio 1997) .................................................................................... 13

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
    No. 01 Civ. 9000, 2001 WL 1842315 (N.D. Ohio Oct. 20, 2001) ........................................ 6
    268 F.Supp. 2d 907 (N.D. Ohio Jun. 12, 2003) .................................................................. 17

*Sutton v. Hopkins Cty., Ky.*,
    No. 03 Civ. 003, 2007 WL 119892 (W.D. Ky. Jan. 11, 2007) ............................................. 6

*Swigart v. Fifth Third Bank*,
    No. 11 Civ. 88, 2014 WL 3447947 (S.D. Ohio July 11, 2014) ............................. 9, 12, 13, 17

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
    56 F.3d 295 (1st Cir. 1995) ...................................................................................... 12, 14

*Thornton v. E. Tex. Motor Freight*,
    497 F.2d 416 (6th Cir. 1974) ...................................................................................... 11

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...................................................................... 14, 17

*Waggoner v. U.S. Bancorp*,
    No. 14 Civ. 1626, 2016 WL 7474408 (N.D. Ohio Dec. 29, 2016) ................................. 11, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ........................................................................... 14

*In re Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*,
    No. 08 Civ. 65000, 2016 WL 5338012 (N.D. Ohio, Sept. 23, 2016) .............................. 17, 19

*Whitlock v. FSL Mgmt., LLC*,
    No. 10 Civ. 00562, 2015 WL 9413142 (W.D. Ky. Dec. 22, 2015) .................................... 18

*Woods v. New York Life Ins. Co.*,
    686 F.2d 578 (7th Cir. 1982) ........................................................................... 7

*Yuzary v. HSBC Bank USA, N.A.*, No.,
    No. 12 Civ. 3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ..................................... 17

**STATUTES**

42 U.S.C. § 1988 ............................................................................................. 20

**RULES**

Fed. R. Civ. P. 23 .................................................................................... *passim*

**REGULATIONS**

29 C.F.R. § 778.310 ........................................................................................ 1

**OTHER AUTHORITIES**

1 McLaughlin on Class Actions § 3:6 ........................................................................ 7

## INTRODUCTION

Plaintiff Robert Schriver and Defendant Golden Corral Corporation ("Golden Corral") have agreed, subject to Court approval, to resolve this wage and hour lawsuit on a collective action basis for significant monetary relief.  The settlement should be approved because it resolves a bona-fide dispute, was the result of arm's-length negotiations between experienced counsel assisted by a private mediator, and provides excellent value to the workers it will benefit.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.  Factual Allegations**

Golden Corral is a buffet-style restaurant chain that operates approximately 50 company-owned restaurants.  ECF No. 1 (Compl.) ¶ 5.  To become an Associate Manager at one of Golden Corral's restaurants, a worker must first undergo a training program.  Declaration of Melissa L. Stewart ("Stewart Decl.") ¶ 13.  Plaintiff alleges that Golden Corral unlawfully paid him and other AM Trainees a fixed "lump sum" each week during this training program, rather than an overtime premium for all hours worked over 40, in violation of federal and state wage laws. ECF No. 1 (Compl.) ¶¶ 9-11, 46; 29 C.F.R. § 778.310.

**II.  Overview of Litigation and Negotiations**

Plaintiff commenced this action on January 18, 2017, after a pre-suit attempt to resolve the claims was not successful.  ECF No. 1.  Shortly thereafter, the parties agreed to a stay for additional settlement discussions.  ECF No. 26.  After mediation sessions with mediator Carole Katz on May 31 and July 27, 2017, the parties were still unable to reach agreement.  ECF No. 37.

From August 24, 2017, through December 2017, the parties exchanged pre-certification discovery, including requests for documents, interrogatories, and requests for admissions, and Defendant produced hundreds of pages of document discovery.  Stewart Decl. ¶ 15.

The parties also stipulated to conditional FLSA certification of a collective action, ECF No. 38, and Defendant agreed not to oppose Plaintiff's motion for certification of Ohio and Pennsylvania AM Trainee classes, ECF No. 52, which the Court granted on December 11, 2017. ECF No. 55. Although Defendant agreed to conditional certification and did not contest class certification, it reserved its right to seek decertification of both at a later stage. ECF No. 52.

Before notice issued to the class and collective, the parties agreed to attempt once more to resolve the claims in this litigation through private mediation. Stewart Decl. ¶ 22; ECF Nos. 56-57. The Court stayed the issuance of notice to the class and collective pending the parties' settlement discussions. ECF No. 57. The parties engaged mediator Hunter Hughes to mediate this matter on January 22, 2018. Stewart Decl. ¶ 24. In preparation for mediation, Golden Corral produced personnel data. *Id*. ¶ 25. Plaintiff's Counsel analyzed these data and constructed a damages model. *Id.* After a full day mediation, the parties were still unable to resolve the matter but continued to engage in extensive settlement discussions. *Id.* ¶ 26.

On March 7, 2018, the parties reached an agreement in principle, and so informed the Court. *Id.* ¶ 27. The Court dismissed the case and ordered the parties to file approval papers by May 7, 2018, which the Court later extended to May 21, 2018. ECF No. 63. Over the next several weeks, the parties finalized the terms of the settlement and executed the formal Joint Stipulation of Settlement and Release ("Agreement") on May 19, 2018. Stewart Decl. ¶ 28.

## <u>SUMMARY OF KEY SETTLEMENT TERMS</u>

I.     **The Settlement Fund**

The Agreement establishes a Gross Settlement Amount of $3,900,000, from which individual Settlement Awards will be paid to eligible collective members who join the

settlement. Ex. 1 (Agreement) ¶ 3.1.[1] The Gross Settlement Amount also covers any Court-approved Service Award, the Settlement Administrator's fees and costs, and Plaintiff's Counsel's Court-approved attorneys' fees and costs, as described further below. *Id.*

## II.    Eligible Employees

Eligible collective members include individuals who were employed by Golden Corral as AM Trainees from March 13, 2013, through March 30, 2017, when the company changed its compensation policy in response to this lawsuit. *Id.* ¶¶ 1.3, 1.25. The settlement collective includes all the members of the previously certified Rule 23 classes. Stewart Decl. ¶ 29.

## III.   Settlement Notice Procedure

The Settlement Notice will inform eligible collective members of the nature of the claims, the terms of the Settlement, estimated Settlement Awards, the scope of the release, and their right to decide whether to participate in the settlement. Ex. 1 (Agreement, Ex. A (Notice)). The Administrator will mail Settlement Notices to all eligible collective members and post the Settlement Notice on a website. Ex. 1 (Agreement) ¶ 2.2. The Administrator will take all reasonable steps to obtain the correct address of any eligible collective member for whom the Settlement Notice is returned as undeliverable, and will attempt re-mailings in the event better address information is obtained. *Id.* ¶ 2.8. Eligible collective members will have 45 calendar days to return a properly-executed and completed Consent to Join and Release Form ("Consent Form") to the Administrator via mail or fax. *Id.* ¶¶ 1.5, 2.2, Ex. A (Notice). The Administrator will mail a reminder notice to any eligible collective member who has not yet returned a completed Consent Form halfway through the notice period. Ex. 1 (Agreement) ¶¶ 2.8-9, Ex. B

---

[1]    Unless otherwise indicated, all exhibits are attached to Stewart Decl., and all capitalized terms have the definitions set forth in the Settlement Agreement.

(Reminder Notice).  Eligible collective members who submit a valid, timely Consent Form will be considered participating collective members and will receive a portion of the Net Settlement Amount.[2]  *See* Ex. 1 (Agreement) ¶ 1.19.

## IV.    Release

Only individuals who participate in the settlement will release any claims – those who do not participate will not release any claims.  *Id*. ¶ 4.2.  Participating collective members will release state and federal claims for unpaid overtime, and related claims for penalties, interest, liquidated damages, that accrued during their employment as AM Trainees from March 13, 2013 through March 30, 2017, as well as attorneys' fees, costs, and expenses.  *Id.* ¶ 4.1.

## V.    Allocation Formula

Eligible collective members' individual Settlement Awards will be calculated with an allocation formula based on the weeks they worked as AM Trainees during the relevant period. *See id.* ¶ 3.4(i).  Eligible collective members will be assigned one point for each week where they were employed as an AM Trainee.  *Id.* ¶ 3.4(i)(a).  To calculate the proportionate share of the Net Settlement Fund for each eligible collective member, the Administrator will add all points for all collective members together to obtain the "Denominator."  *Id.* ¶ 3.4(i)(b)(1).  The Administrator will then divide the number of points for each collective member by the Denominator to obtain each person's "Portion of the Net Settlement Fund."  *Id.* ¶ 3.4(i)(b)(2). The Administrator will then multiply that fractional amount by the Net Settlement Fund to determine each person's estimated award.  *Id.* ¶ 3.4(i)(b)(3).

---

[2]    The Net Settlement Amount is remainder of the Gross Settlement Amount after deductions for Court-approved Service Award, the Administrator's fees and costs, and Plaintiff's Counsel's Court-approved attorneys' fees and costs.  Ex. 1 (Agreement) ¶ 1.18.

For tax purposes, 50 percent of the Settlement Award for each collective member will be treated as back wages and 50 percent of the Settlement Award will be treated as interest, any applicable penalties, liquidated damages, and other non-wage relief.  *Id.* ¶ 3.4(v)(a).  Any portion of the Net Settlement Fund that remains unclaimed by eligible collective members will revert to Golden Corral.  *Id.* ¶¶ 3.4(iv), 3.5.  In addition, 120 days after the issuance of settlement checks, any check not cashed shall become part of the reversion to Golden Corral.  *Id.* ¶ 3.4(iv).

## VI.    Service Award

The Agreement provides that, subject to Court approval, Plaintiff Robert Schriver will receive a $10,000 service award, in recognition of assistance he rendered in obtaining the benefits of the settlement for the collective, as well as the risks he took to do so, and in consideration of executing a general release.  *Id.* ¶¶ 3.3(i), 4.3.

## VII.   Settlement Administration

The parties have retained American Legal Claim Services, LLC ("ALCS"), a third-party claims administrator, to serve as the Settlement Administrator.  Stewart Decl. ¶ 30.  Courts routinely approve ALCS as an administrator.  *See, e.g.*, *Azogue v. 16 for 8 Hosp. LLC*, No. 13 Civ. 7899, 2016 WL 4411422, at *6 (S.D.N.Y. Aug. 19, 2016).  ALCS's fee, not to exceed $27,615.00, will be paid from the Gross Settlement Amount.  Ex. 1 (Agreement) ¶ 3.1(i).

## VIII.  Attorneys' Fees and Litigation Costs

Under the Agreement, subject to Court approval, Plaintiff's Counsel will receive $1,300,000.00 (one-third of the $3,900,000.00 settlement) as attorneys' fees, plus reimbursement of $32,727.62, which represents reasonable out-of-pocket costs and expenses incurred in litigation and resolving this matter.  Stewart Decl. ¶ 31; Declaration of Gregg I. Shavitz ("Shavitz Decl.") ¶ 15; Declaration of Drew Legando ("Legando Decl.") ¶ 10.

## ARGUMENT

### I.     The Court Should Approve The Collective Action Settlement Procedure.

This settlement resolves the claims of AM Trainees through an FLSA collective action procedure, rather than through a Rule 23 class action opt-out procedure.  As a result, a one-step approval process should apply, rather than the two-step process for approval of class actions.[3]

The collective action settlement structure is in the best interest of AM Trainees because it avoids passive Rule 23 releases.[4]  The parties have agreed that only potential plaintiffs who return a consent form and receive payment will release claims; those who elect not to participate in the settlement will not release any claims.  In contrast, in a claims-made Rule 23 settlement, all class members release their claims by operation of Rule 23, even if they do not receive a payment, absent an exclusion request.  *See Sutton v. Hopkins Cty., Ky.*, No. 03 Civ. 003, 2007 WL 119892, at *9 (W.D. Ky. Jan. 11, 2007) (under Rule 23, "[e]very member of the [Rule 23] class who d[oes] not opt out w[ill] be bound" (quoting *Dodge v. Cty. of Orange*, 226 F.R.D. 177, 184 (S.D.N.Y. 2005)).[5]

---

[3]     *See, e.g.*, *Osman v. Grube*, No. 16 Civ. 00802, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) ("A one-step settlement approval process in FLSA collective actions is appropriate.") (citing cases); *Edwards v. City of Mansfield*, No. 15 Civ. 959, 2016 WL 2853619, at *4 (N.D. Ohio May 16, 2016) (approving FLSA settlement in one step); *Bradford v. Legacy Health Servs.*, No. 13 Civ. 218, 2014 WL 7185453, at *2 (N.D. Ohio Dec. 16, 2014) (same); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015).

[4]     Critically, the collective action settlement will benefit the same group of potential plaintiffs, because all the members of the previously certified Ohio and Pennsylvania classes are also members of the putative collective.

[5]     *See also In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, No. 01 Civ. 9000, 2001 WL 1842315, at *21 (N.D. Ohio Oct. 20, 2001) (in Rule 23 settlement, class members who do not opt-out are deemed to have released their claims); *cf. Osman*, 2018 WL 2095172, at *2 (in contrast, "the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits").

A one-step collective settlement will also expedite payment of settlement awards and promote judicial economy. Collective action settlements are more streamlined because there is no need for a lengthy two-step process involving successive rounds of preliminary and final approval briefing, and a final fairness hearing. *See In re Inter-Op Hip Prosthesis Liab. Litig.,* 204 F.R.D. 330, 350 (N.D. Ohio 2001) (discussing two-step approval process required under Rule 23); *see also Knox v. Jones Grp.*, No. 15 Civ. 1738, 2017 WL 3834929, at *2 (S.D. Ind. Aug. 31, 2017) (approving one-step settlement process because "FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions").[6] Collective members will also receive their settlement payments more quickly.[7]

To effectuate this collective action settlement, the Court should decertify the Pennsylvania and Ohio Rule 23 classes. District courts have broad discretion to "alter[] or amend[]" a certification order at any time "before final judgment." Fed. R. Civ. P. 23(c)(1)(C); *see Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a [class] certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.").[8] Decertification is appropriate here because settlement through a collective action

---

[6]     *See also Lauture v. A.C. Moore Arts & Crafts, Inc.,* No. 17 Civ. 10219, 2017 WL 6460244, at *1 (D. Mass. June 8, 2017) (same, collecting cases).

[7]     A streamlined collective settlement will also reduce claims administration costs associated with the processing of potential opt-outs or objections, resulting in a larger percentage of the settlement fund going to collective members as opposed to administration costs. *See Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982) ("The difference between a Rule 23 class action and a section 16(b) class action is . . . that in the latter the class member must opt in to be bound, while in the former he must opt out not to be bound.").

[8]     *See also Hurt v. Commerce Energy, Inc.*, No. 12 Civ. 758, 2014 WL 3735460, at *1 (N.D. Ohio July 28, 2014) (district court has duty to monitor class and redefine, subclass or decertify, as appropriate, as case progresses); 1 McLaughlin on Class Actions § 3:6 (14th ed.) ("There is no exhaustive list of developments that could lead a court to exercise its broad discretion to decertify a class.").

procedure offers significant advantages to AM Trainees without compromising their claims or prejudicing them in any way.[9]  Although not necessarily required, in an abundance of caution, counsel proposes including notice to class members regarding the certification and decertification of the Rule 23 classes and the statutes of limitations for state law claims as part of the notice regarding the parties' collective action settlement.[10]

## II.    The Settlement Is Fair And Reasonable And Should Be Approved.

Courts approve wage and hour settlements when they are reached as a result of contested litigation to resolve bona fide disputes.[11]  If a proposed settlement reflects a reasonable compromise over contested issues, a court should approve the settlement.  *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06 Civ. 299, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008); *see also Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007).

The settlement in this case easily meets the standard for approval.  The settlement is the result of extensive investigation, contested litigation, exchange of formal and informal discovery, and extensive arm's-length negotiations between experienced counsel assisted by two private

---

[9]     *See Headlee v. Wolford*, No. 09 Civ. 92, 2012 U.S. Dist. LEXIS 44257, at *2-3 (S.D. Ga. March 29, 2012) (decertifying class in settlement context upon the parties' joint motion, and finding that decertification would not prejudice class members because notice had not yet issued); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 158 F.R.D. 301, 302-04 (S.D.N.Y. 1994) (granting motion to decertify where decertification would give class members "the freedom to choose the forum in which to pursue their claims" and therefore was in the "best interest" of class members).

[10]     By operation of *American Pipe* tolling and Defendant's agreement, the statute of limitations for class members' state law claims were tolled from March 11, 2016, so they did not suffer any prejudice while they were members of the certified classes.  *See* ECF No. 1 (Compl.) ¶ 17 (discussing parties' agreement); *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553 (1974) (commencement of suit tolls statute of limitations for class claims).

[11]     *See, e.g.*, *Schneider v. Goodyear Tire & Rubber Co.*, No. 13 Civ. 2741, 2014 WL 2579637, at *2-3 (N.D. Ohio June 9, 2014); *Dillworth v. Case Farms Processing, Inc.*, No. 05 Civ. 1694, 2010 WL 776933, at *5-6 (N.D. Ohio Mar. 8, 2010); *Kritzer v. Safelite Solutions, LLC*, No. 10 Civ. 0729, 2012 WL 1945144, at * 5, *10 (S.D. Ohio, May 30, 2012).

mediators.  Stewart Decl. ¶¶ 32-34, 43; *see Swigart v. Fifth Third Bank*, No. 11 Civ. 88, 2014 WL 3447947, at *2, *8 (S.D. Ohio July 11, 2014).

The settlement amount is substantial by any measure, particularly in light of the risks of litigation.  *Id*. ¶ 44.  The average net Settlement Award (after fees, the Service Award, and costs, including settlement administration costs, are deducted) will be approximately $5,882.92 on average per collective member, or $628.71 per training week.  *Id*.  By Plaintiff's estimate, this is nearly all of the unpaid wages collective members stood to recover at trial—not including liquidated damages or attorneys' fees and costs—based on a time-and-half overtime rate, and the estimate that AM Trainees worked approximately 19 overtime hours per week during the training period.[12]  *Id.* ¶ 45.

Although Plaintiff believes his case is strong, it is subject to litigation risk.  "[R]isks are inherent in litigation."  *Sewell v. Bovis Lend Lease, Inc*., No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012); *accord IUE-CWA v. Gen. Motors Corp*., 238 F.R.D. 583, 596 (E.D. Mich. 2006) ("[T]here is no such thing as risk-free, expense-free litigation.").  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969).  For example, at trial, Golden Corral would argue that the wages it paid to AM Trainees were proper under the FLSA, the regulation on which Plaintiff relies was not properly promulgated, any alleged violation was not willful, and that Plaintiff's measure of damages is improper.  *See generally* ECF No. 11 (Answer).  Plaintiff would dispute these arguments, but a trial would be risky and

---

[12]    This is an average based on several AM Trainees' estimated overtime hours worked.  *See* ECF No. 1 (Compl.) ¶ 23 (approximately 25 overtime hours); ECF No. 52 Ex. D (Whalen Decl.) ¶ 4 (approximately 22.5 overtime hours); Ex. E (Schoenberger Decl.) ¶ 4 (approximately 15 overtime hours); Ex. F (Holcomb Decl.) ¶ 3 (same); Ex. G (Stevens Decl.) ¶ 3 (same).

entail a "long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court." *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 556 (S.D. Ohio 2000).  Regardless of the strength of Plaintiff's claims, the inherent risk and expense of litigation is an ever-present reality that confronts Plaintiff in establishing liability and damages.

The proposed allocation of the settlement is also reasonable: it is based on the number of weeks collective members worked AM Trainees.  This is a reasonable approximation of their overtime damages.  Ex. 1 (Agreement) ¶ 3.4(i); *see, e.g.*, *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 09 Civ. 1608, 2010 WL 2490989, at *6 (N.D. Ohio June 15, 2010).

## III.    The Proposed Settlement Notice Is Proper.

The Court should approve the proposed Settlement Notice.  *See* Ex. 1 (Agreement, Ex. A (Notice)).  The proposed Settlement Notice sufficiently informs eligible collective members of the allocation formula, the steps they must follow to participate, the consequences of non-participation, the monetary amount to which they are entitled under the Settlement, the scope and mechanism of the release of claims, the request for attorneys' fees and costs, and other terms of the Agreement.  *See Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).  The Settlement Notice also informs members of the previously certified state law classes about their rights with respect to certification and decertification.

The proposed Settlement Notice provides "accurate and timely notice concerning the pendency of the collective action so that each individual has the opportunity to make an informed decision regarding whether to opt-in to the settlement." *Bassett v. Tenn. Valley Auth.*, No. 09 Civ. 39, 2010 WL 3092251, at *2 (W.D. Ky. Aug. 5, 2010) (citation omitted).

## IV.    The Service Award Should Be Approved as Fair And Reasonable.

Plaintiff requests approval of a $10,000.00 Service Award.  Ex. 1 (Agreement) ¶ 3.3(i).

The Service Award recognizes the time and effort Plaintiff Robert Schriver expended in furtherance of the litigation and settlement, including initiating the lawsuit and informing counsel of the facts initially, providing information and documents to counsel, submitting a declaration, conferring with counsel about the lawsuit, and assisting with the mediation and damages analyses. Stewart Decl. ¶ 46.

Courts in the Sixth Circuit recognize that in common fund cases and where the settlement agreement provides for service awards, plaintiffs who have had extensive involvement in the litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone.[13] Service awards "are common in class action settlement[s] . . . to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Kritzer*, 2012 WL 1945144, at *8 (quoting *Rotuna*, 2010 WL 2490989, at *7) (internal quotation marks omitted).[14]

The proposed Service Award is well within the range of awards that courts within this judicial circuit regularly and routinely grant under these circumstances.[15]

---

[13] *See Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) ("Incentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit."); *see also Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010) (approving and noting incentive awards are typical in Sixth Circuit), *on reconsideration in part* (July 21, 2010).

[14] *See also, e.g.*, *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) (approving theory behind incentive awards in Title VII class action); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991) (approving $50,000 to each of the six class representatives from a common fund); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (approving awards in the amounts of $35,000 and $55,000 to five class representatives from a common fund).

[15] *See, e.g.*, *Waggoner v. U.S. Bancorp*, No. 14 Civ. 1626, 2016 WL 7474408, at *4 (N.D. Ohio Dec. 29, 2016) (approving service awards of $10,000 each for the named plaintiff); *Kritzer*, 2012 WL 1945144, at *18 (awarding $15,000 to the named plaintiffs in FLSA settlement).

V.     **Attorneys' Fees And Costs Should Be Approved As Fair And Reasonable.**

Plaintiff's request for one-third of the Gross Settlement Amount for their attorneys' fees plus reimbursement of actual out-of-pocket costs and expenses is reasonable.  *See* Ex. 1 (Agreement) ¶ 3.2.

A.     **The Percentage Method Is Appropriate For Awarding Attorneys' Fees.**

When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Smillie v. Park Chem. Co*., 710 F.2d 271, 275 (6th Cir. 1983); *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 640 F. Supp. 697, 699-700 (S.D. Ohio 1986).  This is "founded on the equitable principle that those who have profited from litigation should share its costs."  *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 n.6 (1st Cir. 1995).

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage-of-the-fund method[16]—courts routinely favor awarding fees in common fund cases based upon a percentage of the fund.  *Id.* at 307 ("use of the [percentage of the fund] method in common fund cases is the prevailing praxis"); *see also Swigart*, 2014 WL 3447947, at *5 (adopting the percentage approach as "the most appropriate method for determining reasonable attorneys' fees" in wage and hour case); *Feiertag v. DDP Holdings, LLC*, No. 14 Civ. 2643, 2016 WL 4721208, at *1, *7 (S.D. Ohio

---

[16]     *See, e.g.*, *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016), *cert. denied sub nom. Blackman v. Gascho*, 137 S. Ct. 1065 (2017), and *cert. denied sub nom. Zik v. Gascho*, 137 S. Ct. 1065 (2017); *Rawlings v. Prudential–Bache Properties, Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993); *Bailey v. AK Steel Corp.*, No. 06 Civ. 468, 2008 WL 553764, at *1 (S.D. Ohio Feb. 28, 2008).

Sept. 9, 2016); *Rotuna*, 2010 WL 2490989, at *1, *8; *Dillworth*, 2010 WL 776933, at *7-8.

There are several reasons why courts choose the percentage method. First, this method is appropriate in wage and hour cases where "the damages which could have been claimed by each class member [are] relatively modest … for it rewards counsel for taking on a case which might not otherwise be economically feasible." *Bessey v. Packerland Plainwell, Inc.*, No. 06 Civ. 95, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007). The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than [themselves] or [their] client is entitled to a reasonable attorney's fee from the fund as a whole." *Id*. (quoting *Boeing*, 444 U.S. at 478). As a result, courts in the Sixth Circuit and around the country routinely approve requests for one-third of the fund in FLSA collective actions. *See, e.g.*, *Dillworth*, 2010 WL 776933, at *21 (one-third of the fund is "fair and reasonable" in light of the "exceptional" result for class members) (collecting cases); *Swigart*, 2014 WL 3447947, at *7 (awarding 33% of $4 million settlement and finding award "well within the range of fees requested in class and collective actions in Ohio federal district courts").[17]

Second, the percentage of the fund method promotes judicial economy because it "encourages early settlement, which avoids protracted litigation," *Gascho*, 822 F.3d at 279, and

---

[17]    *See also In re S. Ohio Corr. Facility,* 173 F.R.D. 205, 217 (S.D. Ohio 1997) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund"), *rev'd on other grounds*, 24 Fed. App'x 520 (6th Cir. 2001); *Waggoner*, 2016 WL 7474408, at *4 (N.D. Ohio Dec. 29, 2016) (one-third of $1.5 million collective action settlement); *Castillo v. Morales, Inc*., No. 12 Civ. 650, 2015 WL 13021899, at *2 (S.D. Ohio Dec. 22, 2015) (one-third of $2.2 million common fund); *Lapan v. Dick's Sporting Goods*, No. 13 Civ. 11390 (D. Mass. April 19, 2016) (one-third of $3.3 million settlement); *Aboud v. Charles Schwab & Co*., No. 14 Civ. 2712, 2014 WL 5794655, at *1. *5 (S.D.N.Y. Nov. 4, 2014) (one-third of the $3.8 million fund); *Clem v. Keybank, N.A.*, No. 13 Civ. 789, 2014 WL 2895918, at *9-10 (S.D.N.Y. June 20, 2014) (33% of $3.4 million settlement); *Beckman v. KeyBank, N.A*., 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (33% of $4.9 million settlement).

removes the incentive for plaintiffs' lawyers to engage in wasteful litigation to increase their billable hours.  *See Rawlings*, 9 F.3d at 517 (lodestar method "provides incentives for overbilling"); *In re Thirteen Appeals*, 56 F.3d at 307 (percentage method "enhances efficiency"). It "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).  As the Ninth Circuit has explained, "the lodestar method does not reward early settlement" and "class counsel should [not] necessarily receive a lesser fee for settling a case quickly."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002).

Third, recovery of fees based on the percentage of the fund method allows the court to "spread[] fees proportionately among those benefited by the suit."  *Boeing*, 444 U.S. at 478; *see also Chesher v. Neyer*, No. 01 Civ. 0566, 2007 WL 4553908, at *1 (S.D. Ohio Dec. 19, 2007) ("where, as here, a class plaintiff successfully recovers a common benefit for the class, the costs of litigation should be spread among the beneficiaries").

Fourth, the percentage method preserves judicial resources because it permits courts to focus on the benefit conferred upon a class or collective rather than the cumbersome task of reviewing complicated and lengthy billing documents.  *In re Thirteen Appeals*, 56 F.3d at 301 ("[T]he [percentage of the fund] method permits the judge to focus on a showing that the fund conferring a benefit on the class resulted from the lawyers' efforts.") (citation and internal quotation marks omitted); *Rawlings*, 9 F.3d at 516 ("[T]he lodestar method has been criticized for being too time-consuming of scarce judicial resources.").

## B.  The Sixth Circuit's Award Factors Support Approval of Attorneys' Fees.

Reasonableness is the touchstone for determining attorneys' fees.  In determining what constitutes a reasonable percentage of the fund for attorneys' fees, the Sixth Circuit approved six

14

factors: (1) the value of the benefit rendered to the collective; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on contingency; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996).

### 1. The Settlement Bestows Significant Benefit On The Collective.

Plaintiffs' Counsel's fee request is reasonable in light of the significant benefit their efforts conferred on the collective. By Plaintiff's Counsel's estimation, the recovery represents nearly all of the collective's lost wages, or an average of $5,882.92 per collective member – an outstanding recovery that is the direct result of the work done by Counsel.[18] Stewart Decl. ¶¶ 44-45.

### 2. Plaintiff's Counsel Expended Substantial Time And Labor.

Achieving the $3,900,000.00 settlement required significant effort by Plaintiff's Counsel. At the outset of the representation, Plaintiff's Counsel investigated and evaluated the claims and the damages to which collective members were entitled. *Id*. ¶ 32. Before settlement, Plaintiff's Counsel vigorously litigated these claims, including researching and preparing the complaint, preparing, serving and responding to discovery requests, meeting and conferring to resolve discovery disputes, reviewing voluminous discovery produced by Defendant, and negotiating

---

[18] Plaintiff's Counsel's fee should be calculated as a percentage of the full amount of money that the settlement makes available to the Eligible Settlement Collective Members. This is the best measure of what Plaintiff's Counsel accomplished. *See Gascho*, 822 F.3d at 282 (class plaintiffs' "right to share the harvest of the suit . . ., *whether or not they exercise it*, is a benefit in the fund created by the efforts of class representatives and their counsel") (quoting *Boeing*, 444 U.S. at 480) (emphasis in original); *Gokare v. Fed. Express Corp.*, No. 11 Civ. 2131, 2013 WL 12094887, at *6 (W.D. Tenn. Nov. 22, 2013) (not "appropriate for Class Counsel to receive a lower award because Settlement Class Members choose not to claim funds").

certification issues.  *Id.* ¶ 33.  Plaintiff's counsel also devoted significant effort to settlement of this matter: analyzing payroll data to perform a detailed damages analysis, preparing detailed mediation briefs, participating in four full-day mediation sessions with two separate mediators, and successfully negotiating this settlement.  *Id.* ¶ 34.

Plaintiff's Counsel expended significant time and resources to investigate, file, litigate, and resolve the matter: co-counsel firms' attorneys, staff, and paralegals worked approximately 1,225.3 hours on this matter to date, or an aggregate lodestar of approximately $539,584.00.  *Id.* ¶ 35; Shavitz Decl. ¶ 16; Legando Decl. ¶ 11.  These hours are reasonable and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff member participating in the case.[19]  Stewart Decl. ¶ 35; Shavitz Decl. ¶ 16; Legando Decl. ¶ 11. Plaintiff's Counsel used a small team of attorneys at any one time in order to minimize duplication of efforts and maximize billing judgment and made every effort to have the work performed by the attorney or paralegal with the lowest hourly rate who was able to effectively perform it.  Stewart Decl. ¶ 36.

Moreover, the requested fee is not based solely on time and effort already expended.  It should also compensate Plaintiff's Counsel for time that will be spent administering the settlement in the future.  Stewart Decl. ¶ 37; *cf. In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 347 (S.D.N.Y. 2014).  In Plaintiff's Counsel's experience, administering a settlement of this nature requires an ongoing commitment.  Stewart Decl. ¶ 37.  As is common in wage and hour collective actions, Plaintiff's Counsel expects to respond to inquiries from

---

[19]     If the Court requires additional detail regarding the time and efforts of Plaintiff's Counsel, we will provide further records upon request.

collective members after approval of the settlement and when checks are issued.[20]  *Id.*

### 3. Plaintiff's Counsel Undertook The Litigation On A Contingent Basis.

Plaintiff's Counsel prosecuted this wage and hour collective action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of litigation risk.  Stewart Decl. ¶ 38.  "Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming."  *Swigart*, 2014 WL 3447947, at *7.  Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources.  *Id.*  Due also to the contingent nature of the fee shifting statute, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  *Id.* at *6.  Plaintiff's Counsel stood to gain nothing in the event the case was unsuccessful.  *Id.*; *see In re Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*, No. 08 Civ. 65000, 2016 WL 5338012, at *23 (N.D. Ohio, Sept. 23, 2016) (on a contingent basis, "counsel has borne all the risk . . ., including the prospect . . . that the investment . . . would be lost").

---

[20]    The one-third fee requested here is approximately 2.4 times Plaintiff's counsel's lodestar amount to date, which is well within the range that courts award in common fund settlements, in recognition of the "risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved."  *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 794-95 (N.D. Ohio 2010), *on reconsideration in part* (July 21, 2010); *see Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) (approximately 7.6 multiplier); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (approximately 8.3 multiplier); *Bailey v. AK Steel Corp.*, No. 06 Civ. 468, 2008 WL 553764, at *3 (S.D. Ohio Feb. 28, 2008) (3.04 multiplier); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (approximately 6.96 multiplier); *Sulzer*, 268 F. Supp. 2d, at 939 (2.4 multiplier); *Manners v. Am. Gen. Life Ins. Co.*, No. 98 Civ. 0266, 1999 WL 33581944, at *31 (M.D. Tenn. Aug. 11, 1999) (3.8 multiplier); *Vizciano v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (listing nationwide settlements with multipliers up to 19.6); Newberg on Class Actions § 14.6 (4th ed. 2009) ("Multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied.").

Plaintiff's Counsel takes on difficult cases like this one because we believe that they are important.  Stewart Decl. ¶ 39.  Plaintiff's Counsel takes seriously our responsibility to push the law in a direction favorable for employees, especially those who suffer unpaid wages.  *Id.*  Plaintiff's Counsel continues to do so despite, unfortunately, having experienced several major (and very expensive) losses in wage and hour cases over the years.  *Id.*  Plaintiff's Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  *Id.* ¶ 40.  In light of the risk of continued litigation, as well as the excellent monetary benefit to the collective, this factor weighs in favor of granting Plaintiff's Counsel's requested fees.  *Rotuna*, 2010 WL 2490989, at *8; *Dillworth*, 2010 WL 776933, at *8.

### 4.     Public Interest Favors Approval of Attorneys' Fees.

Public policy considerations weigh in favor of granting Plaintiff's Counsel's requested fees.  The FLSA is a remedial statute designed to protect the wages of workers.  *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945).  Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of such statutes.  "[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters."  *Gentrup v. Renovo Servs., LLC*, No. 07 Civ. 430, 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011).  Accordingly, "[e]ncouraging qualified counsel to bring inherently difficult and risky but beneficial class actions . . . benefits society."  *Whitlock v. FSL Mgmt., LLC*, No. 10 Civ. 00562, 2015 WL 9413142, at *9 (W.D. Ky. Dec. 22, 2015).

Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorney[s] general" to seek redress for violations and discouraging future misconduct of a similar nature.  *See Deposit Guar. Nat'l Bank v. Roper, Jackson, Miss.*, 445 U.S.

18

326, 338-39 (1980).  Where, as here, many of the eligible collective members are financially

unable to pursue an action on their own and may have damages that are too small to justify the

litigation, "attorneys who take on class action matters enabling litigants to pool their claims

provide a huge service to the judicial process and should be rewarded for their efforts."  *In re*

*Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 08 Civ. 01998, 2010 WL

3341200, at *9 (W.D. Ky. Aug. 23, 2010) (internal quotation marks omitted).  Accordingly, "the

public has an interest in compensating [Plaintiff's] Counsel here, because recoveries in this case

are far too small if pursued on an individual basis, leaving only contingent-fee class actions as a

mechanism to pursue viable claims."  *In re Whirlpool*, 2016 WL 5338012, at *23; *see also*

*Feiertag*, 2016 WL 4721208, at *7; *Kritzer,* 2012 WL 1945144, at *9.

> **5.     This Wage And Hour Collective Action Is Complex.**

Wage and hour collective actions are "frequently complex matters."  *Gentrup*, 2011 WL

2532922, at *4; *see also Beckman*, 293 F.R.D. at 479.  This case involved more than 430

collective members, numerous disputed issues of law and fact, and a case theory without

precedent directly on point.  Stewart Decl. ¶ 41.  This factor also supports the requested fees.

> **6.     The Quality of Representation And Professional Skill of Plaintiff's**
> **And Defendants' Counsel Support Approval of The Requested Fees.**

Plaintiff's Counsel has significant experience prosecuting large-scale wage and hour class

and collective actions.  Stewart Decl. ¶ 12 (listing cases); Shavitz Decl. ¶ 7 (same); Legando

Decl. ¶ 6 (same).  Plaintiff's Counsel's skill and experience were directly responsible for the

favorable settlement and weigh in favor of granting the requested fees.

> **C.     Plaintiff's Counsel Are Entitled to Reimbursement of Reasonable Expenses.**

Plaintiff's Counsel request reimbursement of $32,727.62 in out-of-pocket expenses to be

paid from the Gross Settlement Amount.  Stewart Decl. ¶ 42; Shavitz Decl. ¶ 15; Legando Decl.

19

¶ 10.  An award of a "reasonable attorneys' fee" includes the authority to award reasonable out-of-pocket expenses incurred by the attorney and which are normally charged to a fee-paying client in the course of providing legal services.  *Northcross v. Bd. of Educ. of Memphis City Schs.*, 611 F.2d 624, 639 (6th Cir. 1979) (applying 42 U.S.C. § 1988) (*abrogation on other grounds recognized by L & W Supply Corp. v. Acuity*, 475 F.3d 737 (6th Cir. 2007)).  "Where attorneys' fees are expressly authorized by statute, . . . the court . . . is authorized to include litigation expenses as part of a reasonable attorneys' fee."  *Renfro v. Ind. Mich. Power Co.*, No. 99 Civ. 877, 2007 WL 710138, at *1 (W.D. Mich. Mar. 6, 2007), *overruled on other grounds*, 497 F.3d 573 (6th Cir. 2007).

Plaintiff's Counsel's expenses of $32,727.62 were necessary to the representation of the eligible collective members.  Stewart Decl. ¶ 42; Shavitz Decl. ¶ 15; Legando Decl. ¶ 10.  These include court fees, Plaintiff's portion of mediator's fees for multiple mediation sessions, postage, travel expenses, working meals, photocopies, and electronic research.  Stewart Decl. ¶ 42; Shavitz Decl. ¶ 15; Legando Decl. ¶ 10.  As such, these costs should be awarded.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court issue an order: (1) approving the settlement set forth in the Agreement; (2) approving the proposed Settlement Notice and directing its distribution; (3) approving the Service Award to the Named Plaintiff; (4) approving Plaintiff's request for attorneys' fees, plus reimbursement of costs and expenses; (5) approving ALCS as the Settlement Administrator and approving payment of its fees and costs; (6) decertifying the previously certified classes; and (7) incorporating the terms of the Agreement.

Dated:  May 21, 2018                    Respectfully submitted,


                                        By: */s/ Melissa L. Stewart*
                                            Melissa L. Stewart

                                        **OUTTEN & GOLDEN LLP**
                                        Justin M. Swartz (admitted *pro hac vice*)
                                        Melissa L. Stewart (admitted *pro hac vice*)
                                        Christopher M. McNerney (admitted *pro hac vice*)
                                        Nina T. Martinez (admitted *pro hac vice*)
                                        Michael C. Danna (admitted *pro hac vice*)
                                        685 Third Avenue, 25th Floor
                                        New York, New York 10017
                                        Telephone: (212) 245-1000

                                        **SHAVITZ LAW GROUP, P.A.**
                                        Gregg I. Shavitz (admitted *pro hac vice*)
                                        Alan Quiles (admitted *pro hac vice*)
                                        1515 S. Federal Highway
                                        Boca Raton, Florida 33432
                                        Telephone: (561) 447-8888

                                        Michael Palitz (admitted *pro hac vice)*
                                        830 3rd Avenue, 5th Floor
                                        New York, New York 10022
                                        Telephone: (800) 616-4000

                                        **LANDSKRONER GRIECO MERRIMAN LLC**
                                        Drew Legando (0084209)
                                        1360 West Ninth Street, Suite 200
                                        Cleveland, Ohio 44107
                                        Telephone: (216) 522-9000

                                        *Attorneys for Plaintiff*

21

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 21, 2018, the above document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

By:  *<u>/s/ Melissa L. Stewart</u>*
　　　Melissa L. Stewart