UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION, YOUNGSTOWN

| | |
|---|---|
| ROBERT SCHRIVER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOLDEN CORRAL CORPORATION,<br><br>Defendant. | Case No. 4:17-cv-00136<br><br>Judge Benita Y. Pearson |

### DECLARATION OF MELISSA L. STEWART IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT, SERVICE AWARD, AND ATTORNEYS' FEES AND COSTS

I, Melissa L. Stewart, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a partner at the firm of Outten & Golden LLP ("O&G") in New York, New York, and a member of its Class Action Practice Group. O&G is a 60+ attorney firm based in New York City, with offices in Chicago, San Francisco, and Washington, D.C., that focuses on representing plaintiffs in a wide variety of employment matters, including individual and class action litigation involving wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations.

2. I am an attorney in good standing admitted to practice in the State of New York, and I am admitted *pro hac vice* in this Court.

3. Along with lawyers from co-counsel firms Shavitz Law Group, P.A. ("SLG") and Landskroner Grieco Merriman, LLC ("LGM"), I am one of the lawyers primarily responsible for prosecuting Plaintiff's claims and the claims of the proposed settlement collective.

4.      I make this declaration in support of Plaintiff's Unopposed Motion for Approval of Settlement, Service Awards, and Attorneys' Fees and Costs.  I have personal knowledge of the matters set forth herein and would so testify if called as a witness at trial.

### Counsel's Background and Experience

5.      I received a Juris Doctor degree, *magna cum laude*, from Fordham University School of Law in 2009.  I received my B.A., *magna cum laude*, in Comparative Literature and Hispanic Studies from the University of Pennsylvania.

6.      I was admitted to the New York State Bar in 2010 and the Bar of the District of Columbia in 2013.  I am also admitted to the bars of the U.S. District Courts for the Eastern and Southern Districts of New York and the District of Colorado and the U.S. Courts of Appeals for the Second and Ninth Circuits.  I am a member in good standing of each of these bars.

7.      From September 2009 to September 2010, I clerked the Honorable Dickinson R. Debevoise of the U.S. District Court for the District of New Jersey.  From September 2010 to September 2011, I clerked for the Honorable James Orenstein, of the U.S. District Court for the Eastern District of New York.

8.      From October 2011 to October 2013, I was associated with Woodley & McGillivary in Washington, D.C., where I litigated class wage and hour cases and represented labor unions in a range of labor-management relations matters.

9.      Since joining O&G in November 2013, I have been engaged primarily in prosecuting wage and hour class and collective actions and class action discrimination cases.

10.     I am a member of the American Bar Association Section on Labor and Employment Law's Federal Labor Standards Legislation Committee, the Federal Bar Council,

New York City Bar Association, and the National Employment Lawyers Association ("NELA"), and I am a member of the board of NELA's New York Chapter.

11. Brief backgrounds of additional key attorneys staffing this litigation from my firm are set forth below:

    a. Justin M. Swartz is a partner at O&G in New York, NY and Co-Chair of its Class Action Practice Group, where he represents workers in class action wage/hour and discrimination cases. Mr. Swartz has been lead counsel or co-lead counsel in dozens of nationwide wage and hour class and collective actions on behalf of workers in a wide variety of industries. Mr. Swartz joined O&G in December 2003 after representing workers as an associate at Goodman & Zuchlewski, LLP in New York and at Stowell & Friedman, Ltd. in Chicago. He graduated from DePaul University School of Law with honors in 1998. He is a member of the State Bars of New York and Illinois, and admitted to practice in the U.S. District Courts for the Southern, Eastern, Northern, and Western Districts of New York, the Northern District of Illinois, the Eastern District of Michigan, and the District of Colorado, and the U.S. Courts of Appeals for the Second, Seventh, and Ninth Circuits. He is admitted *pro hac vice* in this Court.

    b. Christopher M. McNerney is an associate at O&G in New York, NY, where he represents workers in class action wage/hour and discrimination cases. Before joining O&G in September 2013, Mr. McNerney clerked for the Honorable Sarah Netburn in the U.S. District Court for the Southern District of New York. Mr. McNerney earned his B.A., *cum laude*, from Macalester College in 2005, and his J.D., *cum laude*, from New York University School of Law in 2012. He is a member of the New York State Bar and is admitted to practice in the U.S. District Courts for the Eastern and

Southern Districts of New York and the Eastern District of Michigan, and the U.S. Courts of Appeals for the Third and Ninth Circuits. He was named a 2017 Public Justice Trial Lawyer of the Year. He is admitted *pro hac vice* in this Court.

  c. Nina T. Martinez is an associate at O&G in New York, NY, where she represents workers in class action wage/hour and discrimination cases. Prior to joining O&G in September 2017, Ms. Martinez served as a Skadden Fellow at the New York Legal Assistance Group where she developed the Employment Mediation Project. Ms. Martinez received her B.A. from the University of Florida in 2010, an M.S. in Elementary Education from Hunter College in 2012, and her J.D. from the University of Pennsylvania School of Law in 2015. She is admitted to practice in New York and the U.S. District Courts for the Southern and Eastern Districts of New York. She is admitted *pro hac vice* in this Court.

  d. Michael C. Danna is an associate at O&G in New York, NY, where he represents workers in class action wage/hour and discrimination cases. Prior to joining the firm in September 2017, Mr. Danna clerked for the Honorable Tanya S. Chutkan on the U.S. District Court for the District of Columbia. He received his B.A. from Brown University in 2011 and his J.D., *cum laude*, from New York University School of Law in 2017, where he was a Root-Tilden-Kern Scholar. He is admitted to practice in New York, and he is admitted *pro hac vice* in this Court.

12. O&G is experienced and nationally recognized for its expertise in litigating complex class actions, including wage and hour cases like this one. *See e.g., Straunch v. Computer Science Corp.*, 322 F.R.D. 157, No. 14 Civ. 956, 2017 WL 2829652, at *24 n.15 (D. Conn. June 30, 2017) (in wage and hour litigation, finding that O&G "adequately represent[s]

the interests of the putative class"), *motion to decertify denied*, 2017 WL 4683993 (D. Conn. Oct. 18, 2017); *Walsh v. CorePower Yoga LLC*, No. 16 Civ. 5610, 2017 WL 589199, at *8 (N.D. Cal. Feb. 14, 2017) (O&G has "a proven track record in the prosecution of class actions as they have successfully litigated and tried many major class action cases"); *Long v. HSBC USA Inc.*, No. 14 Civ. 6233, 2015 WL 5444651, at *9 (S.D.N.Y. Sept. 11, 2015) (O&G attorneys "have appeared in many major [Fair Labor Standards Act ("FLSA")] and state labor law cases"); *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, 2015 WL 574280, at *4 (E.D.N.Y. Feb. 9, 2015) ("O & G has substantial experience prosecuting and settling nationwide wage and hour class and collective actions, and are well-versed in wage and hour law and class action law and are well-qualified to represent the interests of the class."); *Perez v. Allstate Insurance Co.*, No. 11 Civ. 1812, 2014 WL 4635745, at *25 (E.D.N.Y. Sept. 16, 2014) (appointing O&G as class counsel and noting that "O & G has the requisite experience in handling class actions . . . , are well versed in the applicable law, and have the resources necessary to represent the NYLL Class fairly and adequately"); *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 423 (S.D.N.Y. 2013) (appointing O&G as class counsel in assistant manager misclassification case because it has "experience in handling class actions, sufficient knowledge of the pertinent law, and sufficient resources to commit to this representation"), *aff'd*, 602 F. App'x 3 (2d Cir. 2015); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (granting class certification and appointing O&G as class counsel in multi-state wage and hour class action); and *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29. 2006) (grocery store co-manager misclassification case in which the court later granted summary judgment in favor of plaintiffs and a class of more than 300 grocery store workers, *see* 628 F. Supp. 2d 447 (S.D.N.Y. 2008)); *cf. Houser v. Pritzker*, 28 F. Supp. 3d 222, 248, 255 (S.D.N.Y. 2014) (appointing O&G

class counsel in nationwide Title VII litigation and noting that O&G "bring[s] to the case a wealth of class action litigation experience").

## Overview of Litigation and Negotiations

13. Golden Corral is a buffet-style restaurant chain that operates approximately 50 company-owned restaurants. ECF No. 1 (Compl.) ¶ 5.

14. To become an Associate Manager at one of Golden Corral's restaurants, a worker must first undergo a training program. ECF No. 52.

15. From August 24, 2017, through December 2017, the parties exchanged pre-certification discovery, including requests for documents, interrogatories, and requests for admissions, and Defendant produced hundreds of pages of document discovery.

16. Plaintiff alleges that Golden Corral unlawfully paid him and other AM Trainees a fixed "lump sum" each week during this training program, rather than an overtime premium for all hours worked over 40, in violation of federal and state wage laws. ECF No. 1 (Compl.) ¶¶ 9-11, 46; 29 C.F.R. § 778.310.

17. Plaintiff commenced this action on January 18, 2017, after a pre-suit attempt to resolve the claims was successful. ECF No. 1.

18. Shortly thereafter, the parties agreed to a stay for additional settlement discussions. ECF No. 26.

19. After mediation sessions with mediator Carole Katz on May 31 and July 27, 2017, the parties were still unable to reach agreement. ECF No. 37.

20. From August 24, 2017 through December 2017, the parties exchanged pre-certification discovery, including requests for documents, interrogatories, and requests for admissions, and Defendant produced hundreds of pages of document discovery.

21. During that period, the parties also stipulated to conditional certification of a collective action pursuant to the FLSA, ECF No. 38, and Defendant agreed not to oppose Plaintiff's motion for certification of classes of Ohio and Pennsylvania AM Trainees, ECF No. 52, which the Court granted on December 11, 2017. ECF No. 55.

22. Before notice issued to the class and collective, the parties agreed to attempt once more to resolve Plaintiff's claims through private mediation. ECF No. 56; ECF No. 57.

23. The Court stayed the issuance of notice to the class and collective pending the parties' settlement discussions. ECF No. 57.

24. The parties engaged Hunter Hughes, an experienced mediator in employment and wage and hour law, to mediate this matter on January 22, 2018 in Atlanta, Georgia.

25. In preparation for mediation, Golden Corral produced personnel data to allow Plaintiff to calculate damages. Plaintiff's Counsel analyzed these data and constructed a damages model.

26. After a full day mediation, the parties were still unable to resolve the matter but continued to engage in extensive settlement discussions.

27. On March 7, 2018, the parties reached an agreement in principle, and so informed the Court.

28. Over the next several weeks, the parties finalized the terms of the settlement and executed the formal Joint Stipulation of Settlement and Release ("Settlement Agreement") on May 19, 2018.

29. The settlement collective includes all the members of the previously certified Rule 23 classes.

**Settlement Administration**

30. The parties have retained American Legal Claim Services, LLC ("ALCS"), a third-party claims administrator, to serve as the Settlement Administrator.

**Attorneys' Fees and Litigation Costs**

31. Under the Settlement Agreement, subject to Court approval, Plaintiff's Counsel will receive $1,300,000.00 (one-third of the $3,900,000.00 settlement) as attorneys' fees, plus reimbursement of reasonable out-of-pocket costs and expenses incurred in litigation and resolving this matter.

32. Achieving the $3,900,000.00 settlement required significant effort by Plaintiff's Counsel. At the outset of the representation, Plaintiff's Counsel investigated and evaluated the claims, the damages to which eligible collective members were entitled, and the propriety of collective action certification.

33. Prior to settlement, Plaintiff's Counsel vigorously litigated these claims. Plaintiff's counsel researched and prepared the complaint, briefed and defeated a motion to transfer venue, prepared and served discovery requests, responded to discovery requests, met and conferred to resolve several discovery disputes, reviewed voluminous discovery produced by Defendant, and negotiated certification issues.

34. Plaintiff's counsel also devoted significant effort to settlement of this matter: analyzing payroll data to perform a detailed damages analysis, preparing detailed mediation briefs, participating in several full-day mediation sessions, and successfully negotiating this settlement.

35. Plaintiff's Counsel expended significant resources to investigate, file, litigate, and resolve the matter: co-counsel firms' attorneys, staff, and paralegals worked approximately

8

1,225.3 hours on this matter to date, or an aggregate lodestar of approximately $539,584.00. These hours are reasonable and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff member participating in the case. A summary of these hours is attached hereto as **Exhibit 4**.

36. Plaintiff's Counsel used a small team of attorneys at any one time in order to minimize duplication of efforts and maximize billing judgment and made every effort to have the work performed by the attorney or paralegal with the lowest hourly rate who was able to effectively perform it.

37. The requested fee is not based solely on time and effort already expended. It should also compensate Plaintiff's Counsel for time that will be spent administering the settlement in the future. In Plaintiff's Counsel's experience, administering a settlement of this nature requires an ongoing commitment. As is common in wage and hour collective actions, Plaintiff's Counsel expects to respond to inquiries from Eligible Collective Members after approval of the settlement and checks are issued.

38. Plaintiff's Counsel undertook to prosecute this wage and hour collective action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of significant risk.

39. Plaintiff's Counsel takes on difficult cases like this one because we believe that they are important. Plaintiff's Counsel takes seriously our responsibility to push the law in a direction favorable for employees. Plaintiff's Counsel continues to do so despite, unfortunately, having experienced several major (and very expensive) losses in wage and hour cases over the years. For example, in *Pippins v. KPMG LLP*, No. 11 Civ. 377, 2012 WL 6968332 (S.D.N.Y. Nov. 30, 2012), a professional exemption case on behalf of junior auditors on which O&G was

counsel, we lost on summary judgment and lost on appeal after O&G spent $2,298,699.45 in lodestar.  In *Clarke v. JPMorgan Chase Bank, N.A.*, No. 08 Civ. 2400, 2010 WL 1379778 (S.D.N.Y. Mar. 26, 2010), the court granted summary judgment against the plaintiffs, holding that IT workers were exempt under the computer professional exemption.  O&G, which was one of three co-counsel firms, spent $631,985.00 in lodestar and $15,428.39 in out of pocket expenses in that case alone.  O&G has also invested substantial resources in other risky cases that resulted in no recovery.  In *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460 (2013), we lost at the New York Court of Appeals after investing $2,142,764.75 in lodestar and $70,925.40 in out of pocket expenses.  In *LaMarca v. The Great Atlantic & Pacific Tea Co.*, the defendant filed for bankruptcy after firm had invested $2,953,808.95 in lodestar.

40. Plaintiff's Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.

41. This case involved more than 430 collective members and numerous disputed issues of law and fact.

42. Plaintiff's Counsel request reimbursement of $32,727.62 in out-of-pocket expenses.  These expenses were necessary to the representation of the Eligible Collective Members, and include court fees, mediation fees, postage, transportation, travel expenses, working meals, photocopies, and electronic research.  A summary of these costs is attached as **Exhibit 4**.

### Settlement Is Fair and Reasonable

43.     The settlement is the result of extensive investigation, contested litigation, exchange of formal and informal discovery, and extensive arm's-length negotiations between experienced counsel assisted by two private mediators.

44.     The settlement amount is substantial in light of the risks of litigation. Plaintiff's calculations show that the average net Settlement Award (after fees, the Service Award, and costs, including settlement administration costs, are deducted) will be approximately $5,882.92 on average per collective member, or $628.71 per training week.

45.     By Plaintiff's estimate, this is approximately 99% of the unpaid wages collective members stood to recover at trial (not including liquidated damages or attorneys' fees), based on a time-and-half overtime rate, and the estimate that AM Trainees worked approximately 19 overtime hours per week during the training period.

### Service Awards

46.     The Service Award recognizes the time and effort Plaintiff Robert Schriver expended in furtherance of the litigation and settlement, including initiating the lawsuit and informing counsel of the facts initially, providing information and documents to counsel, submitting a declaration, conferring with counsel about the lawsuit, and assisting with the mediation and damages analyses.

### Exhibits

47.     Attached as **Exhibit 1** is a true and correct copy of the Settlement Agreement and Release, dated May 19, 2018, and accompanying exhibits.

48. Attached as **Exhibit 2** is a true and correct copy of the Declaration of Gregg Shavitz, dated May 21, 2018, which includes a summary of the costs incurred by our co-counsel SLG in prosecuting this litigation.

49. Attached as **Exhibit 3** is a true and correct copy of the Declaration of Drew Legando, dated May 21, 2018, which includes a summary of the costs incurred by our co-counsel LGM, in prosecuting this litigation.

50. Attached as **Exhibit 4** is a true and correct summary of the costs incurred by O&G in prosecuting this litigation and the time spent by each attorney, paralegal, and support staff member as of May 21, 2018.

51. Attached as **Exhibit 5** is a Proposed Order.

\*   \*   \*

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: New York, New York
May 21, 2018

*/s/ Melissa L. Stewart*
Melissa L. Stewart

**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000