# Exhibit 1

DocuSign Envelope ID: F7BDF584-BFF1-415D-A7E8-585C91A61FFB

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| ROBERT SCHRIVER, on behalf of himself and all others similarly situated, | Case No. 4:17 CV 136 |
| Plaintiff, | |
| v. | Hon. BENITA Y. PEARSON |
| GOLDEN CORRAL CORPORATION, | |
| Defendant. | |

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Robert Schriver (the "Named Plaintiff"), individually and on behalf of the collective of individuals he seeks to represent (collectively with the Named Plaintiff, "Plaintiffs"), and Defendant, Golden Corral Corporation ("Defendant") (together with Plaintiffs, the "Parties").

### RECITALS

**WHEREAS**, the Named Plaintiff has filed a Complaint asserting claims against Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the Pennsylvania Minimum Wage Act, (the "Pennsylvania Wage Laws"), 43 Pa. Cons. Stat. §§ 333.101 et seq.; and the Ohio Revised Code (the "Ohio Wage Laws"), §§ 4111.01 et seq., for the alleged failure to pay overtime compensation to Plaintiffs (the "Litigation");

**WHEREAS**, the purpose of this Agreement is to settle the claims asserted in the Litigation, relating to the non-payment of overtime to individuals employed in Golden Corral's training program as AMTs (as defined below), between March 13, 2013 and March 30, 2017.

**WHEREAS**, Defendant denies all allegations made by Named Plaintiff in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

**WHEREAS**, the Parties agreed to engage in discussions regarding the possibility of a voluntary resolution of the claims asserted in the Litigation;

**WHEREAS**, the Parties participated in full-day mediation sessions on September 8, 2016, May 31, 2017, July 27, 2017, and January 22, 2018, which were conducted by experienced mediators Carol Katz (May 31 and July 27, 2017) and Hunter Hughes (September 8, 2016 and

January 22, 2018), and following the January 2018 mediation session, reached an accord resulting in this Agreement; and

**WHEREAS**, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Defendant in the Litigation, conducted interviews with Named Plaintiff and potential witnesses, obtained and reviewed documents relating to Defendant's compensation policies and practices, analyzed payroll data, and obtained witness affidavits from the Named Plaintiff and several other AMTs, and based on this analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a less favorable recovery, and that any recovery would not occur for several years, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the Plaintiffs' best interests.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to settle the Litigation on the following terms and conditions.

1. **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1 "Agreement" means this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

1.2 "Approval Order" means an order entered by the Court, which approves the Settlement and this Agreement.

1.3 "Associate Manager Trainees," or "AMTs" mean individuals who held the position of Associate Manager Trainee (however variously titled) who participated in Defendant's manager training program at any time between March 13, 2013 and March 30, 2017.

1.4 "Claim Forms" shall mean the claim form included in the Settlement Notice, as defined below, for Eligible AMTs to opt-in to the litigation.

1.5 "Claim Period" shall mean: (i) the 45-day period beginning immediately after the Settlement Administrator first mails a Settlement Notice and Claim Form; or (ii) for individuals receiving a re-mailing, the thirty (30) days from the Settlement Administrator's last re-mailing of a Settlement Notice and Claim Form that was returned as undeliverable, or the original 45-day period, whichever is longer.[1]

1.6 "Complaint" means the Class and Collective Action Complaint, dated January 18, 2017.

---

[1]    All time periods provided by this Agreement are stated in calendar days, not business days, unless otherwise specifically identified.

**1.7** "Court" means the United States District Court for the Northern District of Ohio.

**1.8** "Defendant" means Golden Corral Corporation.

**1.9** "Defendant's Counsel" means Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and Poyner Spruill, LLP.

**1.10** "Effective Date" is the later of thirty-one (31) days after: (i) the Court's Approval Order, if no appeal is taken of such Order, or (ii) the Court's entry of a final order and judgment after any appeals are resolved.

**1.11** "Eligible AMT" means any and all current and former employees employed by Defendant in the position of AMT, however variously titled, in the Relevant Period, as defined below.

**1.12** "Employer Payroll Taxes" means all tax payments an employer is required to make arising out of or based upon the payment of employment/wage compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

**1.13** "Gross Settlement Amount" means Three Million Nine Hundred Thousand Dollars ($3,900,000.00), which is the maximum amount that Defendant has agreed to pay to fully resolve and settle this Litigation, including any claim for attorneys' fees approved by the Court, litigation costs approved by the Court; any and all amounts to be paid to Participating AMTs; the cost of settlement administration; and any Court-approved service award.

**1.14** "Last Known Address" or "Last Known Addresses" means the most recently recorded personal mailing address for an Eligible AMT as shown in Defendant's records.

**1.15** "Last Known Telephone Number" means the most recently recorded telephone number for an Eligible AMT as shown in Defendant's records.

**1.16** "Litigation" or the "Lawsuit" or the "Action" mean the lawsuit captioned as *Schriver v. Golden Corral Corporation*, No. 17 Civ. 136 (N.D. Ohio).

**1.17** "Named Plaintiff" means Robert Schriver.

**1.18** "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions/payments for Court-approved: (i) Plaintiffs' Counsel's attorneys' fees; (ii) reasonable litigation costs; (iii) Settlement Administration fees and costs; and (iv) service award to the Named Plaintiff.

**1.19** "Participating AMT" means all Eligible AMTs who timely execute and return a Claim Form. Named Plaintiff shall be considered a Participating AMT regardless of whether he returns a timely executed Claim Form.

**1.20** "Parties" collectively means the Named Plaintiff and Defendant.

**1.21** "Plaintiffs" means the Named Plaintiff and the collective of individuals that he seeks to represent.

**1.22** "Plaintiffs' Counsel" means Outten & Golden LLP, Shavitz Law Group, P.A., and Landskroner Grieco Merriman LLC.

**1.23** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Administrator from the Gross Settlement Amount paid by Defendant. The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's order(s). Interest, if any, earned on any monies in the QSF will become part of the Net Settlement Fund.

**1.24** "Releasees" means Defendant and the other companies that comprise Golden Corral Corporation and their officers, directors, employees, agents, insurers, successors, predecessors, affiliates, parents, subsidiaries, attorneys, and other related entities. Golden Corral franchisees are explicitly excluded from the definition of "Releasees" in this Agreement, and none of them shall be beneficiaries of any release of consideration given by Plaintiffs.

**1.25** "Relevant Period" means the time period between March 13, 2013 and March 30, 2017.

**1.26** "Reminder Notice" means the Reminder Notice and Claim Form sent to all Eligible AMTs who have not yet returned a claim form, thirty (30) days following the mailing of the Settlement Notice reminding them to return a completed Claim Form prior to the end of the Claim Period if they wish to be Participating AMTs.

**1.27** "Settlement" means the settlement between the Parties embodied and contained in this Agreement.

**1.28** "Settlement Administrator" means American Legal Claim Services.

**1.29** "Settlement Amount" or "Settlement Amounts" means each Eligible AMT's proportionate share of the Net Settlement Fund calculated in accordance with this Agreement.

**1.30** "Settlement Check" means the check issued to each Participating AMT for their proportionate share of the Net Settlement Fund calculated in accordance with this Agreement.

**1.31** "Settlement Notice" means the document entitled Notice of Settlement and Opportunity to Join Collective Action and Claim Form, to be approved by the Court in a form substantially similar to **Exhibit A** attached hereto.

## 2. APPROVAL AND NOTICE TO ELIGIBLE SETTLEMENT COLLECTIVE MEMBERS

**2.1** This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

**2.2** The Settlement Administrator will be responsible for establishing a QSF account; preparing and mailing the Settlement Notice and Reminder Notice to Eligible AMTs; creating and maintaining a website containing information about the settlement, which the Parties agree with consist of only the Notice as approved by the Court; preparing and mailing Settlement Checks; distributing any approved service award and attorneys' fees and expenses; sending Reminder Notices to Participating AMTs who have not cashed their checks; providing regular reports to counsel for the Parties regarding the status of the mailing of the Settlement Notice and Claim Form, the claims administration process, and distribution of the Settlement Checks; calculating all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; calculating all Settlement Amounts to be paid to Participating AMTs; retaining and providing a copy of Settlement Checks and redacted Claim Forms signed by the Participating AMTs to Defendant's Counsel, and a copy of unredacted Claim Forms signed by Participating AMTs to Plaintiffs' Counsel. Disputed claims will be resolved by the Settlement Administrator.

**2.3** The Parties will have equal access to the Settlement Administrator and all information related to the administration of the Settlement. The Settlement Administrator shall provide such information to either Party upon request.

**2.4** Defendant agrees to provide the Settlement Administrator accurate information, as provided herein and to the extent reasonably available, necessary to calculate the Settlement Amounts and assist the Settlement Administrator in locating Eligible AMTs. Defendant's records shall be presumed accurate.

**2.5** Plaintiffs shall use their best efforts to file a Motion for Order Approving Settlement of Collective Action and Authorizing Notice of Settlement and Opportunity to Join Collective Action ("Approval Motion") within fourteen (14) days after the execution of this Agreement. Counsel will provide Defendant's Counsel with a draft of the Approval Motion for review and comment at least three (3) days prior to filing it with the Court, and Defendant's Counsel will provide Plaintiffs' Counsel with their comments within two (2) days of receiving the draft Approval Motion. With the Approval Motion, Plaintiffs' Counsel also will file the Agreement together with a proposed Approval Order and Settlement Notice and Claim Form, attached hereto as **Exhibit A**. Among other things, the Approval Motion will ask the Court to: (i) approve the Settlement as fair, adequate, and reasonable; (ii) approve the proposed Settlement Notice and the plan for its distribution; (iii) incorporate the terms of the Settlement; (iv) enter Judgment dismissing the case, with leave to reinstate on or before one hundred and eighty (180) days after the settlement checks are distributed; and (v) retain jurisdiction to enforce the Agreement.

**2.6** Within seven (7) days of the date the Approval Order is issued, Defendant shall give the Settlement Administrator and Plaintiffs' Counsel a list, in electronic form, of all Eligible AMTs' names, Last Known Addresses, Last Known Telephone Number, social security numbers, and the dates of employment as AMTs during the Relevant Period.

**2.7** Settlement Notices will be mailed, via First Class United States Mail (with an enclosed addressed and postage paid return envelope) to Eligible AMTs by the Settlement

Administrator within twenty (20) days of date the Approval Order is issued.  The Settlement Notice will advise Eligible AMTs of their estimated Settlement Amount and of a website where they can review information regarding the Settlement.  Before mailing the Settlement Notice to Eligible AMTs, the Settlement Administrator will perform a search of Eligible AMTs using the U.S. postal service's change of address database.

2.8     The Settlement Administrator shall take all reasonable steps to obtain the correct address for any Eligible AMT or Participating AMT for whom the Settlement Notice or Settlement Check, respectively, is returned by the post office as undeliverable, including using telephone and social security numbers to obtain better address information, and shall attempt re-mailings.  Any Settlement Notices or Settlement Checks returned as undeliverable shall require the Settlement Administrator to request an updated mailing address from the Eligible AMT by phone, and shall also be traced once to obtain a new address and be re-mailed to the Eligible AMT by First Class United States Mail using the best information available to the Settlement Administrator.

2.9     The Settlement Administrator will also send Reminder Notices via First Class U.S. Mail thirty (30) days after the initial mailing or, for those Eligible AMTs who receive a re-mailing, fifteen (15) days after the re-mailing of the Settlement Notice to any Eligible AMTs who, at the time of mailing the Reminder Notice, have not returned an executed Claim Form.  The Reminder Notice will be in the form attached hereto as **Exhibit B**.

2.10    The submission and processing of Claim Forms from Eligible AMTs shall be in accordance with the following procedures.

    i.      To be timely, a Claim Form must be completed and provide the information as instructed on the Claim Form and be signed, dated, and returned to the Settlement Administrator bearing a postmark date that is within the Claim Period.  Claim Forms that are not timely returned are null and void, unless otherwise agreed to in writing by the Parties.

    ii.     If a Claim Form is returned to the Settlement Administrator and not properly completed as described above, within five (5) business days of its receipt, the Settlement Administrator shall send a notice to the relevant Eligible AMT via First Class United States Mail advising the Eligible AMT of the defects ("Cure Letter") and include a new Claim Form to be completed (with an enclosed, postage paid return envelope).  The Settlement Administrator shall provide Plaintiffs' Counsel with a copy of the template Cure Letter for approval prior to its issuance.  The Eligible AMT shall then have the remainder of the Claim Period or fifteen (15) days from mailing of the Cure Letter ("Cure Period"), whichever is longer, to return the new Claim Form and provide the missing information.  If a new Claim Form is not received within that period, the defective Claim Form shall be null and void, unless otherwise agreed to in writing by the Parties.

       iii.        By the close of the Claim Period, Eligible AMTs for whom a Claim Form has not been returned to the Settlement Administrator or whose Claim Form is not a valid Claim Form in compliance with this Section are <u>not</u> Participating AMTs and do not release their claims against the Releasees as described in Section 4 below, but do waive any right to receive any payment associated with the Settlement.

**2.11**    Plaintiffs' Counsel and Defendant's Counsel have the right to make inquiries and receive any information from the Settlement Administrator related to the claims administration process, except that Defendant's Counsel is not entitled to updated contact information located by Settlement Administrator for Eligible AMTs or provided by Participating AMTs, or communications sent to and from Eligible AMTs as such communications are subject to the attorney-client privilege. The Settlement Administrator will periodically update Plaintiffs' Counsel and Defendant's Counsel regarding returned mailings for which it is unable to obtain corrected addresses.

**2.12**    In the event that the Court fails to approve this Agreement, the Parties (a) will attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a renegotiated settlement and agreement (b) and/or any or all Parties may seek reconsideration or appellate review of the decision denying approval of the Agreement. In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the Parties decide to forego further negotiation of a settlement, the Litigation will proceed as if no settlement had been attempted. In that event, nothing in the Settlement or Agreement may be used by or against any Party as stated in Rule 408 of the Federal Rules of Evidence.

## 3.    SETTLEMENT TERMS

### 3.1    Settlement Payments.

       i.        Defendant agrees to pay the Gross Settlement Amount of Three Million Nine Hundred Thousand Dollars ($3,900,000.00), which shall fully resolve and satisfy any and all amounts to be paid to Participating AMTs, to Plaintiffs' Counsel for Court-approved attorneys' fees; to Plaintiffs' Counsel for Court-approved litigation costs; any Court-approved service award as more fully set forth herein, and the Settlement Administrator's fees and costs. Defendant shall pay Employer Payroll Taxes for each Participating AMT separate from, and in addition to, this Gross Settlement Amount. Other than this Employer Payroll Taxes obligation, Defendant will not be required to pay any more than the gross total of $3,900,000.00, which covers no more than 430 potential claimants, the number disclosed by Defendant pre-mediation.

       ii.        Within one (1) business day after the Effective Date, Defendant shall deposit $1,500,000.00 (the "Initial Payment") into the QSF.

DocuSign Envelope ID: F7BDF584-BFF1-415D-A7E8-585C91A61FEB

iii.    Within seven (7) days of the later of the initial 45-day Claim Period or the Claim Period applicable to the last re-mailing of a Settlement Notice and Claim Form that was returned as undeliverable, the Settlement Administrator shall advise Defendant of the total dollar amount of all Settlement Amounts claimed by Participating AMTs ("Aggregate Settlement Amounts").

iv.    If the Aggregate Settlement Amounts is equal to or less than 35% of the amount of the Net Settlement Fund, Defendant shall pay the full balance required to pay the Aggregate Settlement Amounts and any other obligations arising under this Agreement within ten (10) business days of the Settlement Administrator's funding notification pursuant to Section 3.1(iii).  If the Aggregate Settlement Amounts is greater than 35% of the amount of the Net Settlement Fund, Defendant shall pay 35% of the Aggregate Settlement Amounts and any other obligations arising under this Agreement within ten (10) business days of the Settlement Administrator's funding notification pursuant to Section 3.1(iii), and the balance of all payments due under this Agreement within ninety (90) days of the Settlement Administrator's funding notification pursuant to Section 3.1(iii).

v.    Within five (5) business days of the Effective Date, the Settlement Administrator will partially distribute the money in the QSF by making the following payments:

(a)    Paying Plaintiffs' Counsel's Court-approved attorneys' fees and Court-approved costs as described in Section 3.2.

(b)    Paying the Court-approved service award as described in Section 3.3.

(c)    Paying the costs of the Settlement Administrator as described in Section 3.1.

vi.    The Settlement Administrator will issue checks to Participating AMTs for their Settlement Amounts, as described in Section 3.4, within twenty-eight (28) days after the end of the Claim Period or the date the Settlement is fully funded pursuant to Section 3.1(iv), whichever is later.

**3.2**    **Settlement Amounts Payable as Attorneys' Fees and Costs.**

i.    In their Approval Motion, Plaintiffs' Counsel shall ask the Court to approve payment of one-third of the Gross Settlement Amount as an award of attorneys' fees.  In addition, Plaintiffs' Counsel shall seek reimbursement of actual case-related costs and expenses from the Gross Settlement Amount.  These amounts shall constitute full satisfaction of any claim for attorneys' fees or costs, and Plaintiffs agree that they shall not seek, nor be entitled to, any additional attorneys' fees or costs under

any theory or from any source, incurred in relation to this case other than for any fees and costs incurred related to any efforts to enforce the terms of this Agreement.

ii.    The substance of Plaintiffs' Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Agreement.  The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion.  In the event that the Court (or any appellate court) awards less than the requested amounts, only the awarded amounts shall be paid and shall constitute full satisfaction of the obligations of this Section and full payment hereunder.  Any money requested for attorneys' fees or costs that are not approved by the Court shall become part of the Net Settlement Fund.

**3.3**    **Service Award.**

i.    In the Approval Motion, Named Plaintiff will apply to the Court to receive a Service Award of $10,000 from the Gross Settlement Amount for the services he rendered to the settlement collective.

ii.    This service award and any requirements for obtaining any such payments are separate and apart from, and in addition to, the Named Plaintiff's recovery from the Net Settlement Fund as an Eligible AMT.  The substance of the Named Plaintiff's application for a service award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the Settlement and this Agreement.  The outcome of the Court's ruling on the application for a service award shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion.  Any service award money not approved by the Court shall become part of the Net Settlement Fund.

**3.4**    **Distribution of Payments to Participating AMTs.**

i.    Payments to Participating AMTs will be made from the Net Settlement Fund.  To be a Participating AMT and receive a Settlement Check, each Eligible AMT must fill out and timely submit a Claim Form, as outlined in Section 2.10.  The estimated Settlement Amount for each Eligible AMT will be determined by the Settlement Administrator pursuant to the following formula:

(a)    Each Eligible AMT, including the Named Plaintiff, shall be assigned one point for each full week in which the individual was employed as an AMT during the Relevant Period.

(b) To calculate each Eligible AMT's proportionate Settlement Amount:

    1. Add all points for all Eligible AMTs together to obtain the "Denominator";

    2. Divide the number of points for each Eligible AMT by the Denominator to obtain each Eligible AMTs' "Portion of the Net Settlement Fund";

    3. Multiply each Eligible AMT's Portion of the Net Settlement Fund by the Net Settlement Fund to determine each Eligible AMT's Settlement Amount.

ii. The Settlement Administrator's calculations regarding Eligible AMTs' Settlement Amounts from the Net Settlement Fund will be final and binding.

iii. The Settlement Administrator shall use reasonable efforts to make an additional mailing to Participating AMTs whose checks are returned as undeliverable. Such efforts shall include: (a) obtaining correct addresses as described in Section 2.8; (b) using social security numbers to obtain better address information; and/or (c) attempting to reach Participating AMTs by phone, if available.

iv. Participating AMTs shall have one hundred twenty (120) days following the issuance of Settlement Checks to negotiate their Settlement Checks. Any Settlement Checks not cashed within that period shall become void and the Settlement Administrator shall issue a "stop payment" thereon. The funds associated with any such voided checks shall revert to Defendant. The Settlement Administrator shall issue a Reminder Notice via First Class United States Mail sixty (60) days after issuance of Settlement Checks to those Participating AMTs who, at the time of mailing the Reminder Notice, have yet to negotiate their Settlement Checks, reminding them of the deadline to negotiate their Settlement Checks.

v. Defendant' Payroll Tax Responsibility and Tax Characterization of Payments.

(a) For tax purposes, 50% of the payment to a Participating AMT pursuant to this Agreement shall be treated as back wages and 50% of such payment shall be treated as interest, any applicable penalties, liquidated damages and other non-wage relief.

(b) Defendant' share of payroll taxes shall be paid separately and in addition to the Gross Settlement Amount.

(c)     Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security number on an IRS Form W-2.  The Settlement Administrator shall determine the proper tax reporting and withholdings for the service award.  The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholding, deciding the appropriate tax rate, issuing the Settlement Checks and service award and issuing IRS Forms W-2 and Forms 1099.  Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding, and be reported to the IRS and to each of Plaintiffs' Counsel payees under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.

(d)     The employee portion of all applicable income and payroll taxes will be the sole responsibility of the individual Participating AMT receiving a Settlement Check or service award.  The Parties make no representations, and it is understood and agreed that the Parties have made no representations, as to the taxability of any portions of the settlement payments to any Participating AMTs, the payment of any costs or award of attorneys' fees, or the service award.  The Settlement Notice will advise Eligible AMTs to seek their own tax advice prior to acting in response to that Settlement Notice.  Neither Plaintiffs' Counsel nor Defendant's Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

**3.5**     Reversion.  Any portion of the Gross Fund not distributed under the terms of this Agreement shall revert to Defendant.

## 4.     RELEASE OF CLAIMS

**4.1**     Release by Participating AMTs:  Conditioned upon the Court's entry of the Approval Order, and in exchange for monetary consideration received pursuant to this Agreement, all Participating AMTs shall release Releasees from any and all state and federal Wage and Hour claims, including without limitation overtime claims, that accrue during their employment as AM Trainees, relating back to the full extent of the state and federal statute of limitations and continuing through March 30, 2017, including, without limitation, all state and federal claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses, arising out of the allegations in this Litigation.  The claims being released are referred to in this Agreement as "Released Claims."

**4.2**  Any Eligible AMT who does not timely execute and return a Claim Form will not release any claims.

**4.3**  Release by Named Plaintiff:  In consideration of the receipt and acceptance of an approved Service Award, the Named Plaintiff will additionally waive, release and discharge Releasees from all demands, claims and actions, whether known or unknown, relating to his employment or termination of employment with Defendant, including but not limited to claims under the Americans With Disabilities Act, National Labor Relations Act, Fair Labor Standards Act (including but not limited to claims for overtime compensation), Equal Pay Act, Employee Retirement Income Security Act of 1974, Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, Civil Rights Acts of 1866, 1871 and 1991, Family and Medical Leave Act, and any other federal, state or local statute, regulation, or order, or in common law, through the date the Named Plaintiff signs this Agreement; provided, however, that the Named Plaintiff does not waive the right to file a charge or complaint with any administrative agency but waives any right to recover any damages or other personal relief based on any demand, claim or action waived in this Paragraph brought on his own behalf or by any third party, including as a member of any collective action.  Named Plaintiff will not release any claim that cannot be released as a matter of law or rights under this Agreement.

## 5.  PARTIES' AUTHORITY

**5.1**  The signatories represent that they are fully authorized to enter into and to bind the Parties to the terms and conditions of this Agreement.

## 6.  MUTUAL COOPERATION

**6.1**  The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement.  The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.  As soon as practicable after execution of this Agreement, and in accordance with its terms, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendant and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

## 7.  NOTICES

**7.1**  Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To Plaintiffs and/or Settlement Collective:

Justin M. Swartz
Melissa L. Stewart
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, NY 10017
(212) 245-1000
(646) 509-2057 (facsimile)
jms@outtengolden.com
mstewart@outtengolden.com

Gregg I. Shavitz
Shavitz Law Group, P.A.
1515 South Federal Hwy.
Suite 404
Boca Raton, FL 33432
(561) 447-8888
(561) 447-8831 (facsimile)
gshavitz@shavitzlaw.com

Drew Legando
Landskroner Grieco Merriman LLC
1360 West Ninth Street, Suite 200
Cleveland, Ohio 44107
(216) 522-9000
drew@lgmlegal.com

To Defendant:

A. Craig Cleland
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
191 Peachtree Street, NE, Ste. 4800
Atlanta, GA 30303
(404) 870-1718
(404) 870-1732 (facsimile)
craig.cleland@ogletreedeakins.com

David L. Woodard
Poyner Spruill, LLP
P.O. Box 1801
Raleigh, NC 27602
(919) 783-2854
(919) 783-1075 (facsimile)
dlwoodard@poynerspruill.com

DocuSign Envelope ID: F7BDF584-BFF1-415D-A7E8-585C91A61EFB

## 8.    NO ADMISSION OF LIABILITY

**8.1**    Defendant denies all of the allegations made by Named Plaintiff in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation.  Nothing herein will be deemed or used as an admission that a collective or class action should be certified for any purposes other than for settlement.  Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation.

## 9.    INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS

**9.1**    <u>No Public Comment</u>.  The Parties and their counsel agree that they do not intend to issue any press releases announcing the Settlement.  Plaintiff's and Opt-Ins' Counsel will not state on their firms' websites either the amount of the Settlement Payment or the terms and conditions of the Settlement, but may state on their websites that the Action was settled.

**9.2**    Further Acts.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**9.3**    No Assignment.  Named Plaintiff represents and warrants that he has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action, and any attempt to do so shall be of no force or effect.

**9.4**    Entire Agreement.  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein.

**9.5**    Binding Effect.  This Agreement shall be binding upon the Parties and, with respect to Defendant, its affiliates, parents, subsidiaries, predecessors, successors, employees and agents; and, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.  Golden Corral franchisees are explicitly excluded from this Agreement, and none of them shall be bound by its terms and conditions.

**9.6**    Arms' Length Transaction; Materiality of Terms.  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**9.7**    Captions.  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**9.8**    Construction.  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**9.9**    Governing Law.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Ohio, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**9.10**    Continuing Jurisdiction.  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

**9.11**    Waivers, etc. to Be in Writing.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment, with any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement

**9.12**    Counterparts.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

**9.13**    Facsimile, Electronic, and E-mail Signatures.  Any party may execute this Agreement by signing, including by electronic means, or by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or e-mail to counsel for the other party.  Any signature made and transmitted by facsimile or e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or e-mail.

**9.14**    Signatories.  This Agreement is valid and binding if signed by Defendant' authorized representative and the Named Plaintiff.


**WE AGREE TO THESE TERMS.**

DATED: _____        **GOLDEN CORRAL CORPORATION**

By: _____

_____

DATED: 5/19/2018 _____        **ROBERT SCHRIVER**

DocuSigned by:

*Robert Schriver* _____

7976922F840F4BC...

**WE AGREE TO THESE TERMS.**

DATED: 5/18/2018

**GOLDEN CORRAL CORPORATION**

By: _____

R. Chappell Phillips

Senior Vice President & General Counsel

DATED: _____

**ROBERT SCHRIVER**

_____

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| ROBERT SCHRIVER, on behalf of himself and all others similarly situated,<br><br>           Plaintiff,<br><br>      v.<br><br>GOLDEN CORRAL CORPORATION,<br><br>           Defendant. | Case No. 4:17 CV 136<br><br><br>Hon. BENITA Y. PEARSON |

### CONSENT TO JOIN SETTLEMENT AND RELEASE AND CLAIM FORM

**The form must be returned to the Settlement Claims Administrator so that it is postmarked by [45 DAYS FROM DATE OF MAILING].**

I hereby consent and opt-in to become a plaintiff for settlement purposes in a lawsuit brought under the Fair Labor Standards Act ("FLSA"), *Schriver v. Golden Corral Corporation*, No. 17 Civ. 136.  I consent and agree to be bound by any adjudication of this action by the Court. I further agree to be bound by the collective action settlement approved by the Court.  I hereby designate the law firms of Outten & Golden LLP; Shavitz Law Group, P.A.; and Landskroner Grieco Merriman LLC to represent me in this action.  I understand that if I return this Claim Form, I will fully release Golden Corral Corporation ("Golden Corral") and its parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns (the "Releasees") from any and all state and federal Wage and Hour claims, including without limitation overtime claims, that accrued during my employment as an Associate Manager Trainee or Associate Manager Candidate, however variously titled (collectively, "AM Trainees"), relating back to the full extent of the state and federal statute of limitations and continuing through the date of the filing of the complaint, including, without limitation, all state and federal claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses, arising out of the allegations in this case.

_____        _____        _____

Name (print)                                    Signature                                          Date

_____

Street Address

_____

City, State and Zip Code

_____        _____

Telephone Number                                             Email Address

**OFFICIAL COURT NOTICE OF SETTLEMENT AND OPPORTUNITY TO JOIN**

[NAME]
[ADDRESS]
[CITY, STATE ZIP]

---

**If you were an Associate Manager Trainee or Associate Manager Candidate employed by Golden Corral, you may be entitled to a payment from a collective lawsuit settlement.**

*A court authorized this notice.  This is not a solicitation from a lawyer.*

- This notice pertains to any individual employed by Golden Corral Corporation ("Golden Corral") as an Associate Manager Trainee or Associate Manager Candidate, however variously titled (collectively, "AM Trainee") between March 13, 2013 and March 30, 2017 (the time period covered by the lawsuit).

- A former AM Trainee has sued Golden Corral, alleging that Golden Corral failed to pay them overtime compensation for all hours worked in excess of 40 per workweek. Instead, Golden Corral improperly paid AM Trainees a lump sum in lieu of overtime for each overtime hour worked.  Golden Corral denies these allegations and the Court has not made any ruling on the merits of Plaintiff's claims.  The parties have entered into a settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expense.

- You are receiving this Notice because Golden Corral's records indicate you were employed as an AM Trainee during the period covered by the lawsuit, and therefore you are eligible to participate in the settlement.

- <u>The estimated amount of your individual settlement award is listed below, on page 3, section 5.</u>

- As described more fully below, to participate in the settlement, you must mail a properly completed Consent to Join Settlement and Release and Claim Form ("Claim Form") to the Settlement Claims Administrator so that it is post-marked by [INSERT DATE THAT IS 45 DAYS FROM DATE OF MAILING].  If you fail to timely return a Claim Form post-marked by [INSERT DATE THAT IS 45 DAYS FROM DATE OF MAILING], you will not receive any money from the settlement.

**Your legal rights may be affected, and you have a choice to make:**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **RETURN THE CLAIM FORM** | By returning a properly completed Claim Form, you agree to participate in the settlement, receive a monetary settlement payment, and release your claims. |
| **DO NOT RETURN THE CLAIM FORM** | If you do not wish to participate in or be bound by the settlement, you should not return the Claim Form. If you do not timely return a properly completed Claim Form postmarked by [INSERT DATE THAT IS 45 DAYS FROM DATE OF MAILING], you will not receive a monetary settlement payment and will not release your claims. |

These rights and options – and the deadlines to exercise them – are explained in this Notice.

## BASIC INFORMATION

**1.  WHY DID I GET THIS NOTICE?**

Golden Corral's records reflect that you worked as an AM Trainee between March 13, 2013 and March 30, 2017 (the period covered by the lawsuit).

The Court ordered that you be sent this notice because you have a right to know about the settlement of a collective action lawsuit in which you are eligible to participate. This notice explains the lawsuit, the settlement, your legal rights, and what benefits are available.

The Honorable Benita Y. Pearson, United States District Judge in the Northern District of Ohio, is overseeing the lawsuit. The lawsuit is known as *Schriver v. Golden Corral Corporation*, Case No. 17 CV 136. The person who filed the lawsuit is called the "Plaintiff." Golden Corral is called the "Defendant."

**2.  WHAT IS THIS LAWSUIT ABOUT AND WHY IS THERE A SETTLEMENT?**

The lawsuit is about whether Golden Corral failed to pay AM Trainees overtime premium pay for the time they worked in excess of 40 hours a week, and whether Golden Corral improperly paid AM Trainees a lump sum in lieu of overtime.

Defendant denies that it did anything wrong. However, to avoid the burden, expense, and uncertainty of continuing litigation, the parties have agreed to this settlement. The Court has not made any ruling on the merits of the Plaintiff's claims, and no party has prevailed in this action.

3.     **WHAT IS A COLLECTIVE ACTION?**

In a "collective action," one or more people called "Named Plaintiffs" sue on behalf of people who have similar claims.  However, the other employees who have similar claims do not become part of the collective action until they "opt in" to the lawsuit.  You may "opt in" to the lawsuit and participate in the settlement by returning the enclosed Claim Form.  If you timely return the enclosed Claim Form, you will receive a settlement check.

If you worked as an AM Trainee in Pennsylvania or Ohio between March 15, 2013, and March 30, 2017, the Court previously certified a class action under Federal Rule of Civil Procedure 23, of which you were a member, and later decertified the Pennsylvania and Ohio classes to facilitate this collective action settlement.  As a result of the Court's decertification order, the statute of limitations for your overtime claims as an AM Trainee under Ohio or Pennsylvania state law, which was paused (or "tolled") from March 11, 2016 through [DATE OF APPROVAL ORDER], will begin to run again as of [DATE OF APPROVAL ORDER].  However, because the classes were decertified, you will not release any state law claims or be bound by any judgment entered in this action, unless you participate in this settlement as a Collective Member by returning the enclosed Claim Form.

4.     **WHAT ARE THE TERMS OF THE SETTLEMENT AGREEMENT?**

Golden Corral has agreed to pay $3,900,000.00 into a fund to settle the lawsuit and compensate AM Trainees who are covered by the settlement.  The Court has approved the following payments from the fund: (i) attorneys' fees in the amount of one-third of the settlement fund; (ii) out-of-pocket costs and expenses incurred by Plaintiffs' attorneys in the amount of $[AMOUNT]; (iii) a service awards to the Named Plaintiff in the amount of $10,000, in recognition of the risks he took and his service to the collective; and (iv) Settlement Claims Administrator's fees and costs, not to exceed $[AMOUNT].

5.     **HOW MUCH WILL MY PAYMENT BE AND HOW WAS IT CALCULATED?**

Based on the formula that has been approved by the Court, you will receive approximately **$[AMOUNT]**.

Half of this payment is subject to deductions for applicable taxes and withholdings like any other paycheck, for which you will receive a W-2, and half of the payment will be reported on a 1099.

The allocation formula takes into account the number of weeks you worked as an AM Trainee during the period covered by the settlement.  The Settlement Agreement contains the exact allocation formula.  You may obtain a copy of the Settlement Agreement by contacting the Settlement Claims Administrator at the address listed below.

*Plaintiff's Counsel and Defendants' Counsel do not make any representations concerning the tax consequences of this settlement or participation in it, and you are advised to seek your own personal tax advice prior to acting in response to this notice.*

6.    **HOW DO I MAKE A CLAIM?**

In order to join in the lawsuit and receive a payment under the settlement, you must complete, sign and mail the enclosed Claim Form to the Settlement Claims Administrator at the address listed below.  Your Claim Form must be postmarked by no later than [INSERT DATE THAT IS 45 DAYS FROM DATE OF MAILING].

The **Settlement Claims Administrator** – to whom all Claim Forms and questions should be directed – is:

**Golden Corral AM Trainee Settlement**
**<ADDRESS>**
**<PHONE>**
**<E-MAIL>**
**<WEBSITE>**

The Settlement Claims Administrator will issue settlement checks to all AM Trainees who return timely Claim Forms.  You will have 120 calendar days after the date your settlement check is issued to negotiate and cash your settlement check.

7.    **WHAT IS THE LEGAL EFFECT OF THE SETTLEMENT?**

If you return a properly completed Claim Form, you will become part of the collective action settlement.  Once you become part of the settlement, you cannot sue, continue to sue, or be a party in any other lawsuit against Golden Corral and other Releasees about any Released claims, as explained below.  It also means that all of the Court's orders will apply to you and legally bind you.

The "Releasees" are Golden Corral and its parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns.

The "Released claims" are any and all state and federal Wage and Hour claims, including without limitation overtime claims, that accrue during their employment as AM Trainees, relating back to the full extent of the state and federal statute of limitations and continuing through the date of the filing of the complaint, including, without limitations, all state and federal claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses, arising out of the allegations in this case.

If you do not want to participate in, or be bound by, the settlement, you should not return the Claim Form.

8.    **DO I HAVE A LAWYER IN THIS CASE?**

The law firms of Outten & Golden LLP, Shavitz Law Group, P.A., and Landskroner Grieco Merriman LLC, have been designated as legal counsel to represent you and other AM Trainees who participate in the settlement.  You will not be charged separately for

these lawyers. Their fees will be paid from the total settlement fund (as explained in Section 4 above).

**9.      HOW CAN I GET MORE INFORMATION?**

If you have additional questions about this Notice or want more information, you can contact the Settlement Claims Administrator, or Plaintiff's Counsel at the addresses and/or telephone numbers below.

Melissa L. Stewart
Christopher McNerney
Nina T. Martinez
Michael C. Danna
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
(212) 245-1000
GoldenCorralOvertimeSettlement@outtengolden.com

Gregg Shavitz
Alan Quiles
SHAVITZ LAW GROUP, P.A.
1515 S. Federal Hwy., Suite 404
Boca Raton, FL 33432
(561) 447-8888
info@shavitzlaw.com

Dated: [INSERT DATE]

**EXHIBIT B**

# <u>REMINDER NOTICE</u>

Within the past month, you should have received a Court-authorized Notice explaining that you are eligible to participate in a collective action settlement for unpaid overtime against Golden Corral.  A copy of the Notice and Claim Form are enclosed.

Our records show you have not yet submitted a Claim Form.  If you wish to participate in the settlement, you must return a Claim Form by no later than [<u>DATE</u>].

[PASTE TEXT OF ORIGINAL NOTICE AND CLAIM FORM BELOW]